# **EXHIBIT 18**

# HUMBERT and SCHOLAR
### ATTORNEYS AND COUNSELLORS AT LAW
### 200 LITTLE FALLS STREET
### SUITE 400
### FALLS CHURCH, VIRGINIA 22046-4302

DANIEL W. HUMBERT (VA.)         (703) 534-1890        JAMES NEWTON WILHOIT, III (VA. & D.C.)
SAM DAVID SCHOLAR (VA. & D.C.)     Facsimile (703) 534-0250        (OF COUNSEL)

January 10, 1990

Mr. Harry C. Perry, Jr.
Plasterers Local Union No. 96 Pension Fund
1411 K Street, N.W., Suite 1030
Washington, D.C. 20005

                                   Re: Issues concerning the Defined
                                          Benefit Plan and Defined
                                          Contribution Plan

Dear Harry:

       This letter is written in response to your letter of October 16, 1989. We decided to await the IRS approval of the defined contribution plan before we could address these issues. We shall respond to your issues according to the order in your letter.

       First, under the Declaration of Trust of the Defined Benefit Plan dated October 1, 1958, the Trustees under Article VII, Section 3(f) have the power to establish and accumulate reserves as in their opinion are necessary and advisable for the sound and efficient administration of the Pension Plan.

       The reserve was discussed with the board but there is no official approval in the records for the reserve. The reserve would be legal as long as the board finds that it is necessary and advisable. The funds would be part of the individual's equity as of January 1, 1987. The fund should be terminated when the Trustees determine that it is highly unlikely that an unfunded liability may in fact exist. At that point, the reserve together with accrued interest should be distributed to the vested participants.

       With regard to forfeitures, in a money purchase plan forfeitures must be used to reduce employer contributions. The plan does not now specify how this is carried out. You should give the specific employer the benefit of the forfeiture in the following year.

       Fourth, you should adjust the Plan Asset balance on January 1, 1987, for the cost of the annuities as well as the unfunded liability for the twenty participants without annuities. You should also create your unfunded liability reserve. The balance should be alleviated into individual funds in the new plan.

       With regard to the payment of the accrued benefit under the old plan, the PBGC letter indicates that we should give the participants an option of receiving a lump sum distribution, which can be rolled over into an IRA account, or of having it rolled over into the new plan in their individual account.




Scholar-00174

    Fifth, the closing of the books when the contributions are all received appears reasonable. As soon as possible thereafter, you can allocate the contributions and earnings among the participants to determine their account balance so that they can be notified annually of the balance.

    Also enclosed is the first amendment to the new plan. It must be submitted to the IRS by February 19, 1990. Please arrange to have a meeting before then so that their signatures can be obtained. In addition, the Trustees can formally approve the reserve.

    With best regards, I remain,

                              Very truly yours,

                              Humbert and Scholar

                              Sam D. Scholar

SDS/slc

Enclosures

# **EXHIBIT 19**

# SAM D. SCHOLAR
### ATTORNEY AT LAW
308 HILLWOOD AVENUE
SUITE 300
FALLS CHURCH, VIRGINIA 22046-2916

SAM D. SCHOLAR (VA. & D.C.)

(703) 534-1822
Facsimile (703) 536-3970

DANIEL W. HUMBERT (VA.)
(OF COUNSEL)

February 20, 1991

HAND-DELIVERED

Mr. Harry C. Perry, Jr.
Plan Administrator
Plasterers Local Union No. 96
Pension and Welfare Fund
1411 K Street, N.W., Suite 1030
Washington, D.C. 20005

Re: Clarification of Pension Issues

Dear Mr. Perry:

Enclosed is a copy of your inquiries concerning the pension plan. Your questions involve forfeiture and the requirement to pay the forfeited contributions to the employees.

As you know, the IRS pension regulations are written for single employer plans where the employer pays a percentage of the employees wages as a fringe benefit into a pension plan. If the employee works a required number of years, the employee gains a vested ownership interest in the employer's contributions.

The plasterers plan is a multi-employer plan in which the union members have asked the employer to pay a portion of their wages into a union pension and welfare fund instead of directly to the employee as wages. This is not a fringe benefit. It is the employee's money that in a sense is put into a forced savings account.

The best way to insure that the union member does not lose ownership of his wage contributions to these plans is to have immediate 100% vesting in the plan. In this way, the employee would always own the plan contribution. If he leaves employment with a union contractor, he would have the money waiting for him when he retired at age 65. Immediate vesting would eliminate the possibility of forfeiture in the plan.

The plan would need to be amended to carry out this plan. The IRS permits immediate vesting and thus there should be no problems.

Another alternative in the plan would be to lengthen the break-in-service necessary to create a forfeiture. Under the present plan, a one year break-in-service will cause a nonvested account to be forfeited to the employer. This period can be lengthened to five years, avoiding forfeiture in all absences up to 5 years. The problem with this approach is that forfeitures are still possible. Since this is the union member's money and not a fringe benefit from the employer, we should consider eliminating the possibility of forfeiture.



03

With regard to retirees over 65 who return to work, they would vest immediately under the current plan and be entitled to a lump sum distribution for each year that they worked when they were over 65. Their lump sum distribution amount is determined on the valuation date and can't take into account any work performed after the valuation date. Those funds would be reflected in a lump sum distribution in the following year. In a sense, they are like a new employee every year in their post retirement age period.

Please let me know if you have any questions about any of the above.

With best regards, I am

Very truly yours,

Sam D. Scholar

SDS/har

Enclosures

# **EXHIBIT 20**



# C. J. COAKLEY CO., II

7732 LEE HIGHWAY • MAILING ADDRESS: P. O. BOX

MERRIFIELD, VIRGINIA
22116

(703) 573-0540           FAX: (703) 560-1043

May 17, 1991

Plasterers Local #96
1411 K Street, N.W. 1030
Washington, D.C. 20005

RE:   Refunds Due Contractors 1987 and 1988

Gentlemen:

We have deducted C.J. Coakley's portion of refunds due contractors for the above referenced years from our April 1991 Pension and Welfare payments due Plasterer's Local 96.

    1987 Refund Due C.J. Coakley Co., Inc.  $12,047.12
    1988 Refund Due C.J. Coakley Co., Inc.   26,079.23
                                Total    $38,126.35

 Less: April 1991 Pension Due Local 96  <$ 6,644.06>
  Less: April 1991 Welfare Due Local 96  <$18,684.62>
      Balance to be deducted from May
      1991 Pension and Welfare due
      Local 96                            <$12,797.76>

We have enclosed a detailed breakdown of which union members have forfeited their funds for the respective years.

Very truly yours,

C.J. COAKLEY CO., INC.

Carol L. Doyle
Assistant Controller

Enclosure
CLD/bka

PerryFirst -- 00078

LATHING  ▪ PLASTERING  ▪ FIREPROOFING  ▪ DRYWALL  ▪ ACOUSTICAL

# **EXHIBIT 21**

**PLASTERERS LOCAL UNION No. 96**

PENSION FUND       WELFARE FUND

1411 K STREET, N.W.
SUITE #1030
WASHINGTON, D.C. 20005

HARRY C. PERRY, JR.
ADMINISTRATOR

347-6503

May 20, 1991

Trustees of Operative Plasterers Local Union No. 96
Pension and Welfare Funds

Re: <u>Letter from C. J. Coakley Co., Inc. (copy attached)</u>

We received the attached letter today.

As you will note, C. J. Coakley Co., Inc. has applied not only the Pension Fund Contribution for the month of April, but also the Welfare Fund Contribution, against the alleged monies due him for forfeited Pension Fund Contributions on his employees from 1987 and 1988.

Cordially,

Harry C. Perry, Jr.

HCP:lpw
Copy: Sam D. Scholar




# **EXHIBIT 22**



# C. J. COAKLEY CO., INC.

7732 LEE HIGHWAY  •  MAILING ADDRESS: P. O. BOX 655

MERRIFIELD, VIRGINIA
22116

(703) 573-0540                                    FAX: (703) 560-1043

June 17, 1991

Plaster's Local #96
1411 K. Street, N.W. 1030
Washington, D.C.  20005

RE:   Refunds Due Contractors 1988

Gentlemen:

We have deducted the remaining balance of C.J. Coakley, Co., Inc. portion of refunds due contractors for the above referenced year. The balance of $12,797.76 (see copy of May 17, 1991 letter) has been deducted from our May 1991 Pension and Welfare payments due the Plasterer's Local 96.

| | |
|---|---|
| May 1991 Pension Due Local 96 | $ 8,160.75 |
| May 1991 Welfare Due Local 96 | 22,661.90 |
| Total | $30,822.65 |
| Less: Balance of 1988 Refund due C.J. Coakley Co., Inc. | $12,797.76 |
| Total remaining balance due Plasterer's Local 96. | $18,024.89 |

Very truly yours,

C.J. COAKLEY CO., INC.

*Carol L. Doyle*

Carol L. Doyle
Assistant Controller

CLD/bka

0207

LATHING   ■   PLASTERING   ■   FIREPROOFING   ■   DRYWALL   ■   ACOUSTICAL

# **EXHIBIT 23**

stees:
ank Farrell
rry W. Furr
nald A. Molnar
rnelius J. Coakley
mes S. Lertora
 Pepper

**PLASTERERS LOCAL UNION No. 96**

PENSION FUND    WELFARE FUND

1411 K STREET, N.W.
SUITE #1030
WASHINGTON, D.C. 20005

HARRY C. PERRY, JR.
ADMINISTRATOR

347-6503

July 2, 1991

To: Trustees of Operative Plasterers Local
    Union # 96 Pension and Welfare Funds

Attached is a copy of a letter from C. J. Coakley Company, Inc. detailing deduction of the balance of their portion of the 1987-88 refunds due contractors.

Cordially,

Lee P. Wagner

lpw

Copy: Sam Scholar



0206

# **EXHIBIT 24**

JOINT MEETING AGENDA

OPERATIVE PLASTERERS LOCAL UNION NO. 96 PENSION AND WELFARE FUNDS

TUESDAY, JULY 23, 1991

1. Do Trustees wish to change current Pension Plan Vesting to the status of Immediate Vesting? Refer to letter from legal counsel, Sam Scholar, dated 2/20/91.

2. Should Fund investments be invested in amounts smaller than Jumbo Certificates of Deposit to take advantage of better interest rates when available?

3. Resolution to transfer funds from the Pension Fund to Welfare Fund to replace those Welfare Fund contributions appropriated by Coakley as a credit to his expected Pension Fund forfeit refunds. Lee will have appropriate check to effect such transfer.

4. Should Trustees increase Welfare Fund allowance for members to offset increase in Blue Cross/Blue Shield insurance premiums?

5. Lee's action with CD investments - confirmation or rejection.

6. Minutes of previous meeting

7. Should Plan be amended (if allowed by IRS) to provide the following:

   In case of employee who has a break in service and forfeits his equity then returns to work a sufficient number of hours to negate his break; can these funds be replaced by charging the employing contractor who received the original forfeited refund? Can these charges be used to reduce any current forfeited refunds due this employing contractor?

