# ATTACHMENT A

# Form 5500

Department of the Treasury
Internal Revenue Service

Department of Labor
Pension and Welfare Benefits
Administration

Pension Benefit Guaranty Corporation

## Annual Return/Report of Employee Benefit Plan
(With 100 or more participants)

This form is required to be filed under sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 and sections 6039D, 6047(e), 6057(b), and 6058(a) of the Internal Revenue Code, referred to as the Code.
► See separate instructions.

OMB No. 1210-0016

# 1994

This Form Is Open to Public Inspection.

For the calendar plan year 1994 or fiscal plan year beginning _____, 1994, and ending DECEMBER, 19 94

If A(1) through A(4), B, C, and/or D, do not apply to this year's return/report, leave the boxes unmarked.

**For IRS Use Only**

EP-ID  OR-526148611-001-9412

A   This return/report is:   (1) ☐ the first return/report filed for the plan;   (3) ☐ the final return/report filed for the plan; or
(2) ☐ an amended return/report;   (4) ☐ a short plan year return/report (less than 12 months).

IF ANY INFORMATION ON A PREPRINTED PAGE 1 IS INCORRECT, CORRECT IT. IF ANY INFORMATION IS MISSING, ADD IT. PLEASE USE RED INK WHEN MAKING THESE CHANGES AND INCLUDE THE PREPRINTED PAGE 1 WITH YOUR COMPLETED RETURN/REPORT.

B   Check here if any information reported in 1a, 2a, 2b, or 5a changed since the last return/report for this plan . . . . ► ☒

C   If your plan year changed since the last return/report, check here . . . . . . . . . . . . . . . . . . ► ☐

D   If you filed for an extension of time to file this return/report, check here and attach a copy of the approved extension . . ► ☐

**1a** Name and address of plan sponsor (employer, if for a single-employer plan)
(Address should include room or suite no.)

‖.‖..‖‖...‖‖...‖...‖....‖‖....‖....‖....‖   PLASTERERS
OPERATIVE PLASTERERS LOCAL UNION NO
96 PENSION FUND BOARD OF TTEES
1411 K ST NW STE 502
WASHINGTON, DC 20005-3404

**1b** Employer Identification number (EIN)
52-6148611

**1c** Sponsor's telephone number
(202) 347-6503

**1d** Business code (see instructions, page 23)
1740

**1e** CUSIP issuer number

**2a** Name and address of plan administrator (if same as plan sponsor, enter "Same")

OPERATIVE PLASTERERS LOCAL UNION NO
96 PENSION FUND BOARD OF TTEES
1411 K ST NW STE 502
WASHINGTON, DC 20005   PLASTERERS

**2b** Administrator's EIN
52-6148611

**2c** Administrator's telephone number
(202) 347-6503

**3** If you are filing this page without the preprinted historical plan information and the name, address, and EIN of the plan sponsor or plan administrator has changed since the last return/report filed for this plan, enter the information from the last return/report in line 3a and/or line 3b and complete line 3c.

a Sponsor _____ EIN _____ Plan number _____

b Administrator _____ EIN _____

c If line 3a indicates a change in the sponsor's name, address, and EIN, is this a change in sponsorship only? (See line 3c on page 9 of the instructions for the definition of sponsorship.) Enter "Yes" or "No." _____

**4** ENTITY CODE. (If not shown, enter the applicable code from page 9 of the instructions.) ►    4 D - MULTI-EMP-COLL-BARGAINED PLA

**5a** Name of plan ► OPERATIVE PLASTERERS LOCAL UNION
NO 96 PENSION PLAN

**5b** Effective date of plan (mo., day, yr.)
04/01/58

**5c** Three-digit plan number ►   001

All filers must complete 6a through 6d, as applicable.

**6a** ☐ Welfare benefit plan   **6b** ☒ Pension benefit plan
(If the correct codes are not preprinted below, enter the applicable codes from page 9 of the instructions in the boxes.)

5 - DEF. CON. - MONEY PURCHASE

**6c** Pension plan features. (If the correct codes are not preprinted below, enter the applicable pension plan feature codes from page 9 of the instructions in the boxes.)

**6d** ☐ Fringe benefit plan. Attach Schedule F (Form 5500). See instructions.

Caution: A penalty for the late or incomplete filing of this return/report will be assessed unless reasonable cause is established.

Under penalties of perjury and other penalties set forth in the instructions, I declare that I have examined this return/report, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of employer/plan sponsor ✔ _____ Date ✔ 7/18/95   CONTRACTOR TRUSTEE

Type or print name of individual signing for the employer/plan sponsor

Signature of plan administrator ► _____ Date ► 7-15-95   UNION TRUSTEE

Type or print name of individual signing for the plan administrator

For Paperwork Reduction Act Notice, see page 1 of the instructions.   19-0048260   Cat. No. 13500F   Form **5500** (1994)

PerrySecond — 09836



EXHIBIT
33

Form 5500 (1994)

Page 2

**6e** Check all applicable investment arrangements below (see instructions on page 10):
- (1) □ Master trust
- (2) □ 103-12 investment entity
- (3) □ Common/collective trust
- (4) □ Pooled separate account

| | | Yes | No |
|---|---|---|---|

**6f** Single-employer plans enter the tax year end of the employer in which this plan year ends ▶ Month ......... Day ......... Year .........
- (1) □ .......................... Year
- (2) □ .......................... Year

**6g** Is any part of this plan funded by an insurance contract described in Code section 412(i)?
If line 6g is "Yes," was the part subject to the minimum funding standards for either of the prior 2 plan years?

| | Yes | No |
|---|---|---|
| 6g | | X |
| | □ Yes □ No |

N/A

**7** Number of participants as of the end of the plan year (welfare plans complete only lines 7a(4), 7b, 7c, and 7d):

| | | |
|---|---|---|
| **a** Active participants: (1) Number fully vested | 7a(1) | 59 |
| (2) Number partially vested | a(2) | |
| (3) Number nonvested | a(3) | 0 |
| (4) Total | a(4) | 59 |
| **b** Retired or separated participants receiving benefits | 7b | 12 |
| **c** Retired or separated participants entitled to future benefits | 7c | 5 |
| **d** Subtotal. Add lines 7a(4), 7b, and 7c | 7d | 76 |
| **e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits | 7e | 0 |
| **f** Total. Add lines 7d and 7e | 7f | 76 |
| **g** Number of participants with account balances. (Defined benefit plans do not complete this line item.) | 7g | 71 |
| **h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested. | 7h | 0 |

**8a** Was this plan ever amended since its effective date? If "Yes," complete line 8b

| | Yes | No |
|---|---|---|
| 8a | X | |

- **b** If the amendment was adopted in this plan year, complete lines 8c through 8e.
- **c** If line 8a is "Yes," enter the date the most recent amendment was adopted ▶  Month ....1.... Day ....1.... Year ..1992..
- **d** Did any amendment during the current plan year result in the retroactive reduction of accrued benefits for any participant?

| | | | c | | X |
- **d** During the plan year did any amendment change the information contained in the latest summary plan description or summary description of modifications available at the time of amendment?

| | d | | X |
- **e** If line 8d is "Yes," has a summary plan description or summary description of modifications that reflects the plan amendments referred to on line 8d been both furnished to participants and filed with the Department of Labor?

| | 8e | | N/A |

**9a** Was this plan terminated during this plan year or any prior plan year? If "Yes," enter the year ▶

| | Yes | No |
|---|---|---|
| 9a | | X |

- **b** Were all the plan assets either distributed to participants or beneficiaries, transferred to another plan, or brought under the control of PBGC?

| | b | N/A | |
- **c** Was a resolution to terminate this plan adopted during this plan year or any prior plan year?

| | c | | X |
- **d** If line 9a is "Yes," have you received a favorable determination letter from the IRS for the termination?

| | d | N/A | |
- **e** If line 9a or line 9c is "Yes," have participants and beneficiaries been notified of the proposed termination?

| | e | N/A | |
- **f** If line 9a or line 9c is "No," has a determination letter been requested from the IRS?

| | f | N/A | |
- **g** If line 9a is "Yes" and the plan is covered by PBGC, is the plan continuing to file a PBGC Form 1 and pay premiums until the end of the plan year in which assets are distributed or brought under the control of PBGC?

| | g | N/A | |
- **h** During this plan year, did any trust assets revert to the employer for which the Code section 4980 excise tax is due?

| | h | | X |

**10a** In this plan year, was this plan merged or consolidated into another plan(s), or were assets or liabilities transferred to another plan(s)? If "Yes," complete lines 10b through 10e.

| | Yes | No |
|---|---|---|
| 10a | | X |

- **b** Name of plan(s) ▶  N/A    **c** Employer identification number(s) ▶ N/A    **d** Plan number(s) ▶ N/A

**11** Enter the plan funding arrangement code from page 11 of the instructions ▶ **1**    **12** Enter the plan benefit arrangement code from page 11 of the instructions ▶ **1**

**13a** Is this plan established or maintained pursuant to one or more collective bargaining agreements?

| | Yes | No |
|---|---|---|
| 13a | | X |

- **b** If line 13a is "Yes," enter the appropriate six-digit LM Insurance No (see instructions):
- (1) 001-922    (2) .......

**14** If any benefits are provided by an insurance company, insurance service, or similar organization, enter the number of Schedules A (Form 5500), Insurance Information, attached. If none, enter "-0-." ▶ —0—

Form 5500 (1994) — Page 3

**Welfare Plans Do Not Complete Lines 15 Through 24. Go To Line 25.**

| | | Yes | No |
|---|---|---|---|
| **15a** If this is a defined benefit plan subject to the minimum funding standards for this plan year, is Schedule B (Form 5500) required to be attached? (If this is a defined contribution plan leave blank.) (See instructions.) | | 15a | N/A |
| **b** If this is a defined contribution plan (i.e., money purchase or target benefit), is it subject to the minimum funding standards? (If a waiver was granted, see instructions.) (If this is a defined benefit plan, leave blank). | | b | X |
| If "Yes," complete (1), (2), and (3) below: | | | |
| (1) Amount of employer contribution required for the plan year under Code section 412 | b(1) $ | N/A | |
| (2) Amount of contribution paid by the employer for the plan year. Enter date of last payment by employer ► Month ........ Day ........ Year ........ | b(2) $ | N/A | |
| (3) If (1) is greater than (2), subtract (2) from (1) and enter the funding deficiency here; otherwise, enter -0-. (If you have a funding deficiency, file Form 5330) | b(3) $ | N/A | |
| **16** Has the annual compensation of each participant taken into account under the current plan year been limited as required by section 401(a)(17)? (See instructions.) | | 16 | X |
| **17a** Did the plan distribute any annuity contracts this year? (See instructions.) | | a(1) | N/A |
| (2) If (1) is "Yes," did these contracts contain a requirement that the spouse consent before any distributions under the contract are made in a form other than a qualified joint and survivor annuity? | | a(2) | X |
| **b** Did the plan make distributions to participants or spouses in a form other than a qualified joint and survivor annuity (a life annuity if a single person) or a qualified preretirement survivor annuity (exclude deferred annuity contracts)? | | b | X |
| **c** Did the plan make distributions to married participants and beneficiaries without the required consent of the participant's spouse? | | c | X |
| **d** Upon plan amendment or termination, do the accrued benefits of every participant include the subsidized benefits that the participant may become entitled to receive subsequent to the plan amendment or termination? | | d | X |
| **18** Were distributions, if any, made in accordance with the requirements under Code sections 411(a)(11) and 417(e)? | | 18 | X |
| **19** Have any contributions been made or benefits accrued in excess of the Code section 415 limits, as amended? | | 19 | X |
| **20** Is the plan administrator making an election under section 412(c)(8) for an amendment adopted after the plan year? (See instructions) | | 20 | X |

**21** Check if you are applying either of the following in completing lines 21a through 21o (see instructions):
(i) ☐ Reasonable, good-faith interpretation of the nondiscrimination provisions.
(ii) ☐ Substantiation guidelines.
If you checked box 21(ii), enter the last day of the plan year for which data is being submitted ► Month ........ Day ........ Year ........

| | | Yes | No |
|---|---|---|---|
| **a** Does the employer apply the separate line of business rules of Code section 414(r) when testing this plan for the coverage and discrimination tests of Code sections 410(b) and 401(a)(4)? | | 21a | X |
| **b** If line 21a is "Yes," enter the total number of separate lines of business claimed by the employer ► If more than one separate line of business, see instructions for additional information to attach. | | | |
| **c** Does the employer apply the mandatory disaggregation rules under Income Tax Regulations section 1.410(b)-7(c)? If "Yes," see instructions for additional information to attach. | | c | |
| **d** In testing whether this plan satisfies the coverage and discrimination tests of Code sections 410(b) and 401(a), does the employer aggregate plans? | | d | X |
| **e** Does the employer restructure the plan into component plans to satisfy the coverage and discrimination tests of Code sections 410(b) and 401(a)(4)? | | e | X |

**f** If you meet either of the following exception, check the applicable box to tell us which exception you meet and do NOT complete the rest of question 21:
(1) ☐ No highly compensated employee benefited under the plan at any time during the plan year.
(2) ☐ This is a collectively bargained plan that benefits only collectively bargained employees, no more than 2% of whom are professional employees.

| | | Yes | No |
|---|---|---|---|
| **g** Did any leased employee perform services for the employer at any time during the plan year? | | g | X |
| **h** Enter the total number of employees of the employer. Employer includes entities aggregated with the employer under Code section 414(b), (c), or (m). Include leased employees and self-employed individuals | | h | Number |
| **i** Enter the total number of employees excludable because of: (1) failure to meet requirements for minimum age and years of service; (2) collectively bargained employees; (3) nonresident aliens who receive no earned income from U.S. sources; and (4) 500 hours of service/last day rule. | | i | |
| **j** Enter the number of nonexcludable employees. Subtract line 21i from line 21h | | j | |
| **k** Do 100% of the nonexcludable employees entered on line 21j benefit under the plan? ☐ Yes ☐ No | | | |
| **l** If line 21k is "Yes," do NOT complete lines 21l through 21o. | | | |
| **m** Enter the number of nonexcludable employees (line 21j) who are highly compensated employees | | m | |
| **n** Enter the number of nonexcludable employees (line 21j) who benefit under the plan | | n | |
| **o** Enter the number of employees entered on line 21m who are highly compensated employees | | o | |

This plan satisfies the coverage requirements on the basis of (check one):
(1) ☐ The average benefits test
(2) ☐ The ratio percentage test— Enter percentage ► [____] %

PerrySecond – 09838

Form 5500 (1994)

Page 4

|  | | Yes | No |
|---|---|---|---|
| 22a | Is it or was it ever intended that this plan qualify under Code section 401(a)? If "Yes," complete lines 22b and 22c. | 22a | X |
| b | Enter the date of the most recent IRS determination letter. ▶ Month ....2.... Year ..1993. | | |
| c | Is a determination letter request pending with the IRS? | c | X |
| 23a | Does the plan hold any assets that have a fair market value that is not readily determinable on an established market? (If "Yes," complete line 23b) (See instructions) | 23a | N/A |
| b | Were all the assets referred to in line 23a valued for the 1994 plan year by an independent third-party appraiser? | b | N/A |
| | If line 23b is "No," enter the value of the assets that were not valued by an independent third-party appraiser for the 1994 plan year. ▶ N/A | | |
| d | Enter the most recent date the assets on line 23c were valued by an independent third-party appraiser. (If more than one asset, see instructions.) ▶ Month .......Day ........Year .. N/A. | | |
| e | If dividends paid on employer securities held by the ESOP were used to make payments on ESOP loans, enter the amount of the dividends used to make the payments ▶ | | |
| | (If this plan does not have ESOP features leave line 23e blank and go to the 24.) | | |
| 24 | Did the employer/sponsor listed on line 1a of this form maintain other qualified pension benefit plans? If "Yes," enter the total number of plans, including this plan ▶ | 23e | N/A |
| | | 24 | |
| 25a | Did any person who rendered services to the plan receive directly or indirectly $5,000 or more in compensation from the plan during the plan year (except for employees of the plan who were paid less than $1,000 in each month)? If "Yes," complete Part I of Schedule C (Form 5500). | 25a | X |
| b | Did the plan have any trustees who must be listed in Part II of Schedule C (Form 5500)? | b | X |
| c | Has there been a termination in the appointment of any person listed on line 25d below? | c | X |
| d | If line 25c is "Yes," check the appropriate box(es), answer lines 25e and 25f, and complete Part III of Schedule C (Form 5500): | | |
| | (1) ☐ Accountant      (2) ☐ Enrolled actuary      (3) ☐ Insurance carrier      (4) ☐ Custodian | | |
| | (5) ☐ Administrator      (6) ☐ Investment manager      (7) ☐ Trustee | | |
| e | Have there been any outstanding material disputes or matters of disagreement concerning the above termination? | e | X |
| f | If an accountant or enrolled actuary has been terminated during the plan year, has the terminated accountant/actuary been provided a copy of the explanation required by Part III of Schedule C (Form 5500) with a notice advising them of their opportunity to submit comments on the explanation directly to the DOL? | f | N/A |
| g | Enter the number of Schedules C (Form 5500) that are attached. If none, enter -0- ▶ | | |
| 26a | Is this plan exempt from the requirement to engage an independent qualified public accountant? (see instructions). | 26a | X |
| b | If line 26a is "No," attach the accountant's opinion to this return/report and check the appropriate box. This opinion is: | | |
| | (1) ☐ Unqualified | | |
| | (2) ☐ Qualified/disclaimer per Department of Labor Regulations 29 CFR 2520.103-8 and/or 2520.103-12(d) | | |
| | (3) ☐ Adverse      (4) ☐ Disclaimer other      (5) ☐ Other (explain) | | |
| c | If line 26a is "No," does the accountant's report, including the financial statements and/or notes required to be attached to this return/report disclose (1) errors or irregularities, (2) illegal acts, (3) material internal control weaknesses, (4) a less contingency indicating that assets are impaired or a liability incurred, (5) significant real estate or other transactions in which the plan and (A) the sponsor, (B) the plan administrator, (C) the employee(s), or (D) the employee organization(s) are jointly involved; (6) that the plan has participated in any related party transactions; or (7) any unusual or infrequent events or transactions occurring subsequent to the plan year end that might significantly affect the usefulness of the financial statements in assessing the plan's present or future ability to pay benefits? | c | |
| d | If line 26c is "Yes," provide the total amount involved in such disclosure ▶ | d | |
| 27 | If line 26a is "No," complete the following questions. (You may NOT use "N/A" in response to lines 27a through 27f. If lines 27a, 27b, 27c, 27d, 27e, or 27f is checked "Yes," schedules of these items in the format set forth in the instructions are required to be attached to this return/report. Schedule G (Form 5500) may be used as specified in the instructions.) | 27a | X |
| | During the plan year: | | |
| a | Did the plan have assets held for investment? | a | X |
| b | Were any loans by the plan for fixed income obligations due the plan in default as of the close of the plan year or classified during the year as uncollectible? | b | X |
| c | Were any leases to which the plan was a party in default or classified during the year as uncollectible? | c | X |
| d | Were any plan transactions or series of transactions in excess of 5% of the current value of plan assets? | d | X |
| e | Do the notes to the financial statements accompanying the accountant's opinion disclose any nonexempt transactions with parties-in-interest? | e | X |
| f | Did the plan engage in any nonexempt transactions with parties-in-interest not reported on line 27e? | f | X |
| g | Did the plan hold qualifying employer securities that are not publicly traded? | g | X |
| h | Did the plan purchase employer securities or any nonpublicly traded securities that were not appraised in writing by an unrelated third party within 3 months prior to their receipt? | h | X |
| i | Did any person manage plan assets who had a financial interest worth more than 10% in any party providing services to the plan or receive anything of value from any party providing services to the plan? | i | X |

Form 5500 (1994)

Page 5

|  |  | Yes | No |
|---|---|---|---|
| 28 | Did the plan acquire individual whole life insurance contracts during the plan year? . . . . . . . . . . **28** | | X |
| 29 | During the plan year: | | |
| a (1) | Was this plan covered by a fidelity bond? If "Yes," complete lines 29a(2) and 29a(3) . . . . **29a(1)** | X | |
| (2) | Enter amount of bond ▶ $ 1,000,000 | | |
| (3) | Enter the name of the surety company ▶ AETNA CASUALTY & SURETY COMPANY | | |
| b (1) | Was there any loss to the plan, whether or not reimbursed, caused by fraud or dishonesty? . . **b(1)** | | X |
| (2) | If line 29b(1) is "Yes," enter amount of loss ▶ $ | | |

30a Is the plan covered under the Pension Benefit Guaranty Corporation termination insurance program?
☐ Yes   ☒ No   ☐ Not determined

b If line 30a is "Yes" or "Not determined," enter the employer identification number and the plan number used to identify it.
Employer identification number ▶          Plan number ▶

31 Current value of plan assets and liabilities at the beginning and end of the plan year. Combine the value of plan assets held in more than one trust. Allocate the value of the plan's interest in a commingled trust containing the assets of more than one plan on a line-by-line basis unless the trust meets one of the specific exceptions described in the instructions. Do not enter the value of that portion of an insurance contract that guarantees, during this plan year, to pay a specific dollar benefit at a future date. Round off amounts to the nearest dollar; any other amounts are subject to rejection. Plans with no assets at the beginning and the end of the plan year, enter -0- on line 31f.

| Assets | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|
| a Total noninterest-bearing cash . . . . . . . . . . . . . | **a** | 0 | 0 |
| b Receivables: (1) Employer contributions . . . . . . . . . | **b(1)** | 1,609 | 5,107 |
| (2) Participant contributions . . . . . . . . . . . | **(2)** | 0 | 0 |
| (3) Income . . . . . . . . . . . . . . . . . | **(3)** | 2,190 | 1,413 |
| (4) Other . . . . . . . . . . . . . . . . . | **(4)** | 117 | 0 |
| (5) Less allowance for doubtful accounts . . . . . . . | **(5)** | 0 | 0 |
| (6) Total. Add lines 31b(1) through 31b(4) and subtract line 31b(5) ▶ | **(6)** | 3,916 | 6,520 |
| c General investments: (1) Interest-bearing cash (including money market funds) | **c(1)** | 191,725 | 192,242 |
| (2) Certificates of deposit . . . . . . . . . . . | **(2)** | 967,442 | 914,235 |
| (3) U.S. Government securities . . . . . . . . . . | **(3)** | 0 | 0 |
| (4) Corporate debt instruments: (A) Preferred . . . . . | **(4)(A)** | 0 | 0 |
| (B) All other. . . . . . . | **(4)(B)** | 101,800 | 72,125 |
| (5) Corporate stocks: (A) Preferred . . . . . . . . | **(5)(A)** | 0 | 0 |
| (B) Common . . . . . . . . . | **(5)(B)** | 0 | 0 |
| (6) Partnership/joint venture interests . . . . . . . | **(6)** | 0 | 0 |
| (7) Real estate: (A) Income-producing . . . . . . . | **(7)(A)** | 0 | 0 |
| (B) Nonincome-producing . . . . . . | **(7)(B)** | 0 | 0 |
| (8) Loans (other than to participants) secured by mortgages: (A) Residential . | **(8)(A)** | 0 | 0 |
| (B) Commercial . | **(8)(B)** | 0 | 0 |
| (9) Loans to participants: (A) Mortgages . . . . . . | **(9)(A)** | 0 | 0 |
| (B) Other . . . . . . . | **(9)(B)** | 0 | 0 |
| (10) Other loans . . . . . . . . . . . . . . | **(10)** | 0 | 0 |
| (11) Value of interest in common/collective trusts . . . . | **(11)** | 0 | 0 |
| (12) Value of interest in pooled separate accounts . . . . | **(12)** | 0 | 0 |
| (13) Value of interest in master trusts . . . . . . . | **(13)** | 0 | 0 |
| (14) Value of interest in 103-12 investment entities . . . . | **(14)** | 0 | 0 |
| (15) Value of interest in registered investment companies . . | **(15)** | 0 | 0 |
| (16) Value of funds held in insurance company general account (unallocated contracts) . | **(16)** | 0 | 0 |
| (17) Other . . . . . . . . . . . . . . . . | **(17)** | 0 | 0 |
| (18) Total. Add lines 31c(1) through 31c(17) . . . . . ▶ | **(18)** | 1,260,967 | 1,178,602 |
| d Employer-related investments: (1) Employer securities . . . | **d(1)** | 0 | 0 |
| (2) Employer real property (OFFICE FURNITURE & FIXTURES) | **(2)** | 836 | 836 |
| e Buildings and other property used in plan operation . . . . | **e** | 0 | 0 |
| f Total assets. Add lines 31a, 31b(6), 31c(18), 31d(1), 31d(2), and 31e . ▶ | **f** | 1,265,719 | 1,185,958 |
| **Liabilities** | | | |
| g Benefit claims payable . . . . . . . . . . . . | **g** | 0 | 0 |
| h Operating payables . . . . . . . . . . . . . | **h** | 58 | 45 |
| i Acquisition indebtedness . . . . . . . . . . . . | **i** | 0 | 0 |
| j Other liabilities . . . . . . . . . . . . . . | **j** | 126,049 | 2,434 |
| k Total liabilities. Add lines 31g through 31j . . . . . ▶ | **k** | 126,107 | 2,479 |
| **Net Assets** | | | |
| l Subtract line 31k from line 31f . . . . . . . . . ▶ | **l** | 1,139,612 | 1,183,479 |

PerrySecond -- 09840

rm 5500 (1994)

Page 6

**32** Plan income, expenses, and changes in net assets for the plan year. Include all income and expenses of the plan, including any trust(s) or separately maintained fund(s), and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar; any other amounts are subject to rejection.

### Income

| | | | | (a) Amount | (b) Total |
|---|---|---|---|---|---|
| a | Contributions: | | | | |
| | (1) | Received or receivable from: | | | |
| | | (A) | Employers | a(1)(A) | 56,226 | |
| | | (B) | Participants | (B) | 0 | |
| | | (C) | Others | (C) | 0 | |
| | (2) | Noncash contributions | (2) | 0 | |
| | (3) | Total contributions. Add lines 32a(1)(A), (B), (C) and line 32a(2) ▶ | (3) | | 56,226 |
| b | Earnings on investments: | | | | |
| | (1) | Interest | | | |
| | | (A) | Interest-bearing cash (including money market funds) | b(1)(A) | 3,615 | |
| | | (B) | Certificates of deposit | (B) | 28,250 | |
| | | (C) | U.S. Government securities | (C) | 0 | |
| | | (D) | Corporate debt instruments | (D) | 6,674 | |
| | | (E) | Mortgage loans | (E) | 0 | |
| | | (F) | Other loans | (F) | 0 | |
| | | (G) | Other interest (JOHN HANCOCK LIFE INS CO.) | (G) | 7,772 | |
| | | (H) | Total interest. Add lines 32b(1)(A) through (G) ▶ | (H) | | 46,311 |
| | (2) | Dividends: (A) Preferred stock | b(2)(A) | 0 | |
| | | (B) | Common stock | (B) | 0 | |
| | | (C) | Total dividends. Add lines 32b(2)(A) and (B) ▶ | (C) | | 0 |
| | (3) | Rents | (3) | | 0 |
| | (4) | Net gain (loss) on sale of assets: (A) Aggregate proceeds | (4)(A) | 0 | |
| | | (B) | Aggregate carrying amount (see instructions) | (B) | 0 | |
| | | (C) | Subtract (B) from (A) and enter result | (C) | | 0 |
| | (5) | Unrealized appreciation (depreciation) of assets | (5) | | (9,675) |
| | (6) | Net investment gain (loss) from common/collective trusts | (6) | | 0 |
| | (7) | Net investment gain (loss) from pooled separate accounts | (7) | | 0 |
| | (8) | Net investment gain (loss) from master trusts | (8) | | 0 |
| | (9) | Net investment gain (loss) from 103-12 investment entities | (9) | | 0 |
| | (10) | Net investment gain (loss) from registered investment companies | (10) | | 0 |
| c | Other income | c | | 0 |
| d | Total income. Add all amounts in column (b) and enter total ▶ | d | | 92,862 |

### Expenses

| | | | | | |
|---|---|---|---|---|---|
| e | Benefit payment and payments to provide benefits: | | | | |
| | (1) | Directly to participants or beneficiaries | e(1) | 35,360 | |
| | (2) | To insurance carriers for the provision of benefits | (2) | 0 | |
| | (3) | Other | (3) | 0 | |
| | (4) | Total payments. Add lines 32e(1) through 32e(3) | (4) | | 35,360 |
| f | Interest expense | f | | 0 |
| g | Administrative expenses: (1) Salaries and allowances | g(1) | 0 | |
| | (2) | Accounting fees | (2) | 1,750 | |
| | (3) | Actuarial fees | (3) | 0 | |
| | (4) | Contract administrator fees | (4) | 7,800 | |
| | (5) | Investment advisory and management fees | (5) | 0 | |
| | (6) | Legal fees | (6) | 1,750 | |
| | (7) | Valuation/appraisal fees | (7) | 0 | |
| | (8) | Trustees fees/expenses (including travel, seminars, meetings, etc.) (INSURANCE) | (8) | 824 | |
| | (9) | Other (OFFICE SUPPLIES & EXPENSE) | (9) | 1,511 | |
| | (10) | Total administrative expenses. Add lines 32g(1) through 32g(9) | (10) | | 13,635 |
| h | Total expenses. Add lines 32e(4), 32f, and 32g(10) | h | | 48,995 |
| i | Net income (loss). Subtract line 32h from line 32d | i | | 43,867 |
| j | Transfers to (from) the plan (see instructions) | j | | |
| k | Net assets at beginning of year (line 31l, column (a)) | k | | 1,139,612 |
| l | Net assets at end of year (line 31l, column (b)) ▶ | l | | 1,183,479 |

| | | Yes | No |
|---|---|---|---|
| **33** | Did any employer sponsoring the plan pay any of the administrative expenses of the plan that were not reported on line 32g? | | X |

PerrySecond — 09841

**SCHEDULE C**
**(Form 5500)**
Department of the Treasury
Internal Revenue Service

Department of Labor
Pension and Welfare Benefits Administration

Pension Benefit Guaranty Corporation

## Service Provider and Trustee Information

This schedule is required to be filed under section 104 of the
Employee Retirement Income Security Act of 1974.

► File as an attachment to Form 5500.

Additional Schedules C (Form 5500) may be used, if needed, to
provide additional information for Parts I, II, and/or III.

OMB No. 1210-0016

**1994**

This Form is
Open to Public
Inspection

| For the calendar year 1994 or fiscal plan year beginning | , 1994, and ending | , 19 |
| --- | --- | --- |

| Name of plan sponsor as shown on line 1a of Form 5500  BOARD OF TRUSTEES | Employer identification number |
| --- | --- |
| OPERATIVE PLASTERERS LOCAL UNION NO. 96 PENSION FUND | 52 : 6148611 |

| Name of plan | Three-digit |
| --- | --- |
| OPERATIVE PLASTERERS LOCAL UNION NO. 96 PENSION FUND | plan number ► 0:0:1 |

**Part I**  Service Provider Information (see instructions)

| 1 Enter the total dollar amount of compensation paid by the plan to all persons receiving less than $5,000 during the plan year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | 3,500 |
| --- | --- | --- |

| 2 (a) Name | (b) Employer identification number (see instructions) | (c) Official plan position | (d) Relationship to employer, employee organization, or person known to be a party-in-interest | (e) Gross salary or allowances paid by plan | (f) Fees and commissions paid by plan | (g) Nature of service code (see instructions) |
| --- | --- | --- | --- | --- | --- | --- |
| (1) HARRY C. PERRY, JR. | 52:1219257 | Contract administrator | NONE | NONE | 7,800 | 12 |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| (5) | | | | | | |
| (6) | | | | | | |
| (7) | | | | | | |
| (8) | | | | | | |
| (9) | | | | | | |
| (10) | | | | | | |
| (11) | | | | | | |
| (12) | | | | | | |
| (13) | | | | | | |
| (14) | | | | | | |
| (15) | | | | | | |
| (16) | | | | | | |
| (17) | | | | | | |
| (18) | | | | | | |
| (19) | | | | | | |
| (20) | | | | | | |
| (21) | | | | | | |
| (22) | | | | | | |
| (23) | | | | | | |
| (24) | | | | | | |
| (25) | | | | | | |
| (26) | | | | | | |
| (27) | | | | | | |
| (28) | | | | | | |
| (29) | | | | | | |
| (30) | | | | | | |
| (31) | | | | | | |
| (32) | | | | | | |
| (33) | | | | | | |
| (34) | | | | | | |
| (35) | | | | | | |
| (36) | | | | | | |
| (37) | | | | | | |
| (38) | | | | | | |
| (39) | | | | | | |
| (40) | | | | | | |

For Paperwork Reduction Act Notice, see page 1 of the Instructions for Form 5500.    Cat. No. 13515E    Schedule C (Form 5500) 1994

PerrySecond — 09842

Schedule C (Form 5500) 1994                                                                    **Page 2**

| **Part II**  **Trustee Information** | Enter the name and address of all trustees who served during the plan year. If more space is required to supply this information, attach additional Schedules C (Form 5500). |

| | |
|---|---|
| Name    RONALD BEDDOW | Name |
| Address    ROUTE # 4, BOX 511 | Address |
| BERKELEY SPRINGS, WV  25411 | |
| Name    FRANCIS R. BROCATO | Name |
| Address    3702 WELLS AVENUE | Address |
| MT RAINIER, MD  20822 | |
| Name    DONALD A. MOLNAR | Name |
| Address    2130 WEBER DRIVE | Address |
| DISTRICT HEIGHTS, MD  20747 | |
| Name    CORNELIUS J. COAKLEY | Name |
| Address    P. O BOX 655 | Address |
| MERRIFIELD, VA  22116 | |
| Name    JAMES S. LERTORA | Name |
| Address    1701 MAYDALE DRIVE | Address |
| SILVER SPRING, MD  20904 | |
| Name    EDGAR PEPPER | Name |
| Address    320 WEST 24TH STREET | Address |
| BALTIMORE, MD  21211-3290 | |
| Name | Name |
| Address | Address |
| Name | Name |
| Address | Address |

| **Part III**  **Termination Information (see instructions)** | | | | |

| (a) Name | (b) EIN | (c) Position | (d) Address | (e) Telephone No. |
|---|---|---|---|---|
| | | | | |

(1)  Explanation:

| (a) Name | (b) EIN | (c) Position | (d) Address | (e) Telephone No. |
|---|---|---|---|---|
| | | | | |

(2)  Explanation:

| (a) Name | (b) EIN | (c) Position | (d) Address | (e) Telephone No. |
|---|---|---|---|---|
| | | | | |

(3)  Explanation:

PerrySecond -- 09843

**SCHEDULE G**
**(Form 5500)**

Department of the Treasury
Internal Revenue Service

Department of Labor
Pension and Welfare Benefits Administration

**Financial Schedules**

This schedule may be filed as an attachment to the Annual Return/Report
Form 5500 under Section 104 of the Employee Retirement Income Security Act
of 1974, referred to as ERISA.

See the Instructions for Item 27 of the Form 5500.

▶ Attach to Form 5500.

OMB No. 1210-0016

**1994**

This Form Is Open
to Public Inspection

For calendar plan year 1994 or fiscal plan year beginning _____ , 1994, and ending _____ , 19 ____

| Name of plan sponsor as shown on line 1a of Form 5500   BOARD OF TRUSTEES | Employer identification number |
|---|---|
| OPERATIVE PLASTERERS LOCAL UNION NO. 96 PENSION FUND | 52 : 6148611 |
| Name of plan | Three-digit |
| OPERATIVE PLASTERERS LOCAL UNION NO. 96 PENSION FUND | plan number ▶   0 : 0 : 1 |

**Part I**   Schedule of Assets Held for Investment Purposes—See Form 5500, Item 27a.

| (a) | (b) Identity of issue, borrower, lessor, or similar party | (c) Description of investment including maturity date, rate of interest, collateral, par or maturity value | (d) Cost | (e) Current value |
|---|---|---|---|---|
| | C & P TEL CO OF WVA (BOND) | 7.250%-DUE 2/1/13 ($20,000) | 19,800 | 17,500 |
| | C & P TEL CO OF VA (BOND) | 7.250%-DUE 6/1/12 ($20,000) | 19,775 | 17,350 |
| | CINN GAS & ELECT (BOND) | 7.375%-DUE 5/1/99 ($20,000) | 20,200 | 19,225 |
| | SOUTHERN BELL T & T (BOND) | 7.625%-DUE 3/15/13 ($20,000) | 19,775 | 18,050 |
| | TOTAL CURRENT VALUE | | | 72,125 |
| | | | | |
| | WASHINGTON FEDERAL SAVINGS | CD MAT 4/30/95 - 4.50% INT | 90,000 | 90,000 |
| | COLUMBIA FIRST BANK | CD MAT 1/14/95 - 3.90% INT | 90,000 | 90,000 |
| | CRESTAR BANK - DC | CD MAT 5/29/95 - 4.60% INT | 90,000 | 90,000 |
| | CRESTAR BANK - VA | CD MAT 1/2/95 - 3.10 INT | 50,000 | 53,211 |
| | HOME FEDERAL SAVINGS BANK | CD MAT 5/9/95 - 4.26% INT | 90,000 | 90,000 |
| | FIRST UNION BANK - MD | CD MAT 4/21/95 - 4.40% INT | 90,000 | 90,000 |
| | FIRST UNION BANK - DC | CD MAT 3/31/95 - 4.20% INT | 90,000 | 90,000 |
| | RIGGS NATIONAL BANK | CD MAT 4/1/95 - 3.85% INT | 90,000 | 90,000 |
| | CITIBANK | CD MAT 5/11/95 - 3.68% INT | 50,000 | 51,024 |
| | NATIONSBANK - VA | CD MAT 7/1/95 - 4.51 INT | 90,000 | 90,000 |
| | SIGNET BANK | CD MAT 4/17/95 - 3.40% INT | 90,000 | 90,000 |
| | TOTAL CURRENT VALUE | | | 914,235 |

For Paperwork Reduction Act Notice, see the Instructions for Form 5500.        Cat. No. 14739A        Schedule G (Form 5500) 1994

PerrySecond -- 09844

# ATTACHMENT B

Page 1

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

(Southern Division)

--------------------------------:

PLASTERERS' LOCAL UNION NO. 96    :

PENSION PLAN, et al.,             :

                  Plaintiffs    :    Civil Action No.

v.                                :    PJM 06 CV 338

HAROLD PERRY, et al.,             :

                  Defendants    :

--------------------------------:


Deposition of DONALD A. MOLNAR

Washington, D.C.

Thursday, August 16, 2007

9:35 a.m.


Job No.:  1-109714

Pages  1 - 176

Reported By:  Susan B. Fillmore, R.P.R.

Page 26

1    audit policy?

2         A    No.

3         Q    Do you recall Mr. Perry ever advising that

4    the trustees should establish a statement of

5    investment policy?

6         A    I don't recall.

7         Q    Do you recall Mr. Scholar ever advising

8    the trustees that they should establish a statement

9    of investment policy?

10        A    No.

11        Q    What was the investment policy of the

12   board of trustees during the time period that you

13   sat as a trustee?

14            MR. BRAMLETTE:   Objection as to form.   You

15   can answer.

16   BY MR. ROSE:

17        Q    Do you understand my question?

18        A    Yes.   And I don't know whether I can

19   really answer it.   Mr. Perry's office handled the

20   investments.

21        Q    And why is it that you believe that

22   Mr. Perry's office was handling the investments?

8b6ee0b1-067e-42fe-a166-7f0a07ba953c

DEPOSITION OF DONALD A. MOLNAR
CONDUCTED ON THURSDAY, AUGUST 16, 2007

Page 144

1    corner?

2        A    Yes.

3        Q    Did you read this document before you

4    signed it?

5        A    I probably read some of it.

6        Q    But not the whole thing, you think?  If

7    the Fund counsel had advised you that giving Plan

8    assets back to employers was inconsistent with the

9    plan document and ERISA, would you have allowed

10   monies to be returned to the employers?

11       A    I don't think so.

12       Q    Why do you say you don't think so?

13       A    No.  I would say no.

14       Q    Did the board of trustees ever inform

15   participants of the Plan that it had given money,

16   Plan assets, back to contributing employers?

17       A    I don't know.  I couldn't answer that yes

18   or no.  I don't know.

19       Q    You don't recall the board of trustees

20   ever directing the Plan administrator to advise the

21   participants that balances contributed in their

22   particular names had been returned to contributing

DEPOSITION OF DONALD A. MOLNAR
CONDUCTED ON THURSDAY, AUGUST 16, 2007

Page 145

1    employers?

2              MR. BRAMLETTE:  Objection as to form.

3              MR. KOLKER:  Objection to form.

4    BY MR. ROSE:

5         Q    Do you understand my question?

6         A    Yes.  No.

7         Q    Is that something you think you would

8    remember?

9         A    Yeah, I think I would, yes.

10        Q    Do you recall when Mr. Perry ever advised

11   the board of trustees that giving Plan assets back

12   to employers constituted a prohibited transaction

13   under ERISA?

14             MR. KOLKER:  Objection to form; lack of

15   foundation.

16   BY MR. ROSE:

17        Q    Do you understand my question?

18        A    Yes.  No.

19        Q    Is that something you think you would

20   recall?

21        A    Yes.

22        Q    Do you recall whether Mr. Scholar ever

8b6ee0b1-067e-42fe-a166-7f0a07ba953c

DEPOSITION OF DONALD A. MOLNAR
CONDUCTED ON THURSDAY, AUGUST 16, 2007

Page 147

1       A    Lertora.

2       Q    Mr. Lertora?  Do you recall what Mr.

3   Lertora asked?

4       A    He didn't think it was right.  In fact, he

5   told them he didn't want the money back.

6       Q    When we went through that exhibit with the

7   checks, it appeared you signed the check that was

8   presumably sent to Mr. Lertora.  Do you recall

9   whether that check was ever returned?

10      A    That, I don't know.

11      Q    During your time as trustee, do you recall

12  at any point whether the Plan administrator advised

13  the board that ERISA required that Plan assets be

14  invested in a diversified portfolio?

15      A    No.

16      Q    Is that something you think you would

17  remember?

18      A    I don't know whether I would have or not.

19      Q    Okay.  Do you recall at any time when you

20  were a trustee whether Mr. Scholar, Fund counsel,

21  ever advised the trustees that ERISA required that

22  Plan assets be invested in a diversified portfolio?

DEPOSITION OF DONALD A. MOLNAR
CONDUCTED ON THURSDAY, AUGUST 16, 2007

Page 148

1      A      No.

2      Q      Do you understand what a diversified

3  portfolio is?

4      A      Not really.

5      Q      Do you understand the types of investments

6  that the Plans you were a trustee to held?

7      A      I believe that the bulk of it was CDs.

8      Q      And what type of investment is that?  What

9  is your understanding of what type of investment

10  that is?

11          MR. KOLKER:  Objection to form.

12  BY MR. ROSE:

13      Q      Do you understand my question?

14      A      I understand the question, but I really

15  don't know an answer.

16      Q      Well, there are conservative investments

17  and riskier investments.  There's a spectrum.  Where

18  on that spectrum would you see CDs?

19      A      Conservative.

20      Q      Okay.  And if most of the assets were in

21  CDs, a conservative investment, would you understand

22  that to be a diversified portfolio?

DEPOSITION OF DONALD A. MOLNAR

CONDUCTED ON THURSDAY, AUGUST 16, 2007

Page 149

1       MR. BRAMLETTE:   Objection.

2   BY MR. ROSE:

3       Q    Do you understand my question?

4       A    Yeah.   No.

5       Q    If you had been advised by the Plan

6   administrator or Fund counsel that you were required

7   to have a diversified portfolio for the Plan's

8   assets, would you have in fact diversified the

9   assets of the Plan?

10      MR. BRAMLETTE:   Objection, compound.   You

11  can answer.

12  BY MR. ROSE:

13      Q    Do you understand my question?

14      A    Yes.   Well, I think I would have been in

15  favor of diversifying the investment.

16      Q    Was there ever any consideration to hire

17  an investment manager to handle the assets of the

18  Plan?

19      MR. BRAMLETTE:   Objection, asked and

20  answered.

21      MR. ROSE:   I asked about an investment

22  consultant.

8b6ee0b1-067e-42fe-a166-7f0a07ba953c

# ATTACHMENT C

1

1          IN THE UNITED STATES DISTRICT COURT

2                  DISTRICT OF MARYLAND

3                   (Southern Division)

4    --------------------------------:

5    PLASTERERS' LOCAL UNION NO. 96   :

6    PENSION PLAN, et al.,            :

7                      Plaintiffs  :  Civil Action No.

8    v.                              :  PJM 06 CV 338

9    HAROLD PERRY, et al.,           :

10                     Defendants  :  **ORIGINAL**

11   --------------------------------:

12

13            Deposition of JAMES S. LERTORA

14                  Washington, D.C.

15            Tuesday, September 18, 2007

16                    10:02 a.m.

17

18

19

20   Job No.:  1-112167

21   Pages  1 - 244

22   Reported By:  Susan B. Fillmore, R.P.R.



L.A.D.
REPORTING &

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com

159

1    the trustees that there was a legal requirement

2    under a law call ERISA, the Employee Retirement

3    Income Security Act 1974, as amended, that there was

4    a requirement for the trustees to have a diversified

5    portfolio for the Fund?

6        A    No.

7        Q    If you had been advised by Mr. Scholar

8    that there was a legal duty to have a Diversified

9    portfolio, investment portfolio for the Pension

10   Fund, what would you have done as a trustee?

11           MR. KOLKER:   Objection to form.

12   BY MR. ROSE:

13       Q    Do you understand my question?

14       A    Yes.   Probably would have been more mouthy

15   about how it was -- if they had to be done a certain

16   way.  I thought we were doing it in accordance with

17   the trust.

18       Q    The same question for Mr. Perry, if Mr.

19   Perry or Ms. Wagner had ever advised you or the

20   other trustees that there was a legal duty to have a

21   diversified portfolio of investments of the Pension

22   Fund's assets, would you have directed that the

DEPOSITION OF JAMES S. LERTORA
CONDUCTED ON TUESDAY, SEPTEMBER 18, 2007

220

1    general?

2        Q    I'm asking a general question first.  And

3    if you would like it re-read, I'd be happy to have

4    it.

5        A    I don't recall that he did that.

6        Q    Okay.  With respect to the amounts that

7    were sent back to the contributing employers, these

8    checks that we looked at in Exhibit 19, do you know

9    whether or not any notice was given to the

10   participants that money had been sent from the

11   Pension Fund to the contributing employers?

12       A    Did -- read it again.

13           MR. ROSE:  That's okay.  Please.

14           (Last question was read as requested.)

15           MR. BRAMLETTE:  I'm going to object as to

16   form.  You can answer.

17   BY MR. ROSE:

18       Q    Do you understand the question?

19       A    Whether or not they were informed.  No, I

20   don't have a clue whether they were informed.

21           (Lertora Exhibit No. 31 marked for

22   identification and retained by counsel.)

# ATTACHMENT D

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Southern Division)


PLASTERERS' LOCAL UNION NO. 98 )

PENSION PLAN, et al.,            )

       Plaintiffs,        )

      v.                      ) Civil Action No.

HAROLD PERRY, et al.,            ) PJM 06 CV 338

      Defendants.        )

    - - - - - - - - - -



DEPOSITION OF KEITH HICKMAN

WEDNESDAY, OCTOBER 3, 2007







Reported by:  Lori G. Mackenzie, RPR

Job No.:  183134

Page 17

1    with the Plasterers Local 96; is that correct?

2         A.    Yes.

3         Q.    Do you have any other position with

4    any other union?

5         A.    No.

6         Q.    Can you tell me when you -- did

7    there come a point when you became a trustee of

8    the pension fund that the Plasterers Local 96

9    maintained?

10        A.    Yes.

11        Q.    When was that?

12        A.    Roughly 1999, the end of '99,

13   somewhere.

14        Q.    And how did it come about that you

15   became a trustee?

16        A.    By virtue of my position.

17        Q.    By virtue of your position as

18   business manager?

19        A.    Yes.

20        Q.    And did there come a point when

21   there was a vacancy among the trustees of the

22   pension fund in 1999?

Kieth Hickman

Page 166

1   contractors that occurred prior to the time that

2   you became a trustee?

3           MR. ROSE:  Objection, vague and

4   ambiguous.

5   BY THE WITNESS:

6       A.    I didn't know anything about the

7   Plasterers plan before I came on board.

8   BY MR. KOLKER:

9       Q.    Okay.

10      A.    I'm a Cement Mason.

11      Q.    No, no, no.  My question -- let

12  me -- I didn't do a good job of that question.

13  Let me try it again.

14          After you came on board in 1999, did

15  you thereafter at any point come to learn that

16  before you were a board member the Plasterers had

17  refunded certain sums to certain contractors?

18  Did you ever hear that?  While you were a trustee

19  from 1999 to 2005?

20          MR. ROSE:  Objection.  When in 2005?

21  Through the end of the year?

22          MR. KOLKER:  No.  Until Harry Perry

Kieth Hickman

Page 167

1    was terminated, in the fall of 2005.  I think it

2    is September.

3    BY THE WITNESS:

4         A.    Actually, I think we found out after

5    we started the merger process.

6    BY MR. KOLKER:

7         Q.    Who is we?

8         A.    The local, the trustees.

9         Q.    Okay.  You found out when?

10        A.    I don't know the exact time.  But --

11   that's when we started -- we were actually -- the

12   trustees found out.

13        Q.    Okay.  Did you ever hear about that

14   prior to the time that you -- that you are

15   describing that you discussed this during the

16   merger?

17             MR. ROSE:  Objection, vague and

18   ambiguous.  What is "that"?

19   BY MR. KOLKER:

20        Q.    All right.  Did you ever -- let me

21   withdraw the question and I will try to put it

22   more clearly.

Kieth Hickman

Page 186

1          A.     Yes.

2          Q.     And who did you receive the minutes

3    from, draft minutes?

4          A.     Ms. Wagner.

5          Q.     Mr. Kolker asked you a question with

6    respect to when you became aware that pension

7    fund moneys had been returned to contractors in

8    the early mid '90s.  Do you recall his asking you

9    questions in that regard?

10         A.     Yes.

11         Q.     Do you recall that after I was

12   retained as counsel to the Plasterers fund in the

13   fall of 2005 that the trustees of the Plasterers'

14   fund decided to retain the services of a forensic

15   accountant to conduct a review of the funds

16   records?

17         A.     Yes, I recall that.

18         Q.     Okay.  And do you recall whether or

19   not it was after the forensic accountant

20   completed its review of the funds records as to

21   whether or not that was when the trustees were

22   informed -- first informed about the return of

**Kieth Hickman**

Page 187

1    plan assets to the contractors in the early mid

2    '90s?

3              MR. KOLKER:  Objection to leading.

4    BY THE WITNESS:

5         A.      This is when we first found out.

6              MR. ROSE:  Okay.  I have no further

7    questions.

8              MR. KOLKER:  Just one or two here.

9      FURTHER EXAMINATION BY COUNSEL FOR DEFENDANT

10              HARRY C. PERRY, JR.

11   BY MR. KOLKER:

12        Q.      You got the minutes from Ms. Wagner

13   in between meetings you just testified, right?

14        A.   Yes.

15        Q.      I take it you read them over when

16   you received them?  Is that right?

17        A.   Yes.

18        Q.      And then you came into the meeting

19   subsequently the next meeting and signed them; is

20   that right?

21        A.   Yes.

22        Q.      So if you -- if there was anything

# ATTACHMENT E

1

1        IN THE UNITED STATES DISTRICT COURT

2              DISTRICT OF MARYLAND

3    --------------------------------:

4    PLASTERERS' LOCAL UNION NO. 96    :   **ORIGINAL**

5    PENSION PLAN, et al.,             :

6                  Plaintiffs    :   Civil Action No.

7    v.                                :   PJM 06 CV 338

8    HAROLD PERRY, et al.,             :

9                  Defendants    :

10   --------------------------------:

11

12          Deposition of HARRY C. PERRY, JR.

13                Washington, D.C.

14            Tuesday, August 7, 2007

15                 10:05 a.m.

16

17

18

19

20   Job No.:  1-108813

21   Pages  1 - 445

22   Reported By:  Susan B. Fillmore, R.P.R.



**L.A.D.**
REPORTING &

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

19

1    '60s --

2         A    None.

3         Q    -- as associate administrator?

4         A    (Witness shakes head.)

5         Q    Did you ever get any specific training in

6    order to be able to perform the plan administration

7    responsibilities?

8         A    No.

9         Q    And that was true after you became the

10   administrator after Mr. Malin passed away?

11        A    That's true.

12        Q    Well, in 1974 there was a law that was

13   passed called the Employee Retirement Income

14   Security Act of 1974.  Were you aware of its

15   passage?

16        A    Not really.  I don't recall any particular

17   involvement.

18        Q    What do you mean by involvement?

19        A    Knowing about it.

20        Q    Okay.  Do you recall a time that you did

21   become aware that -- and I'm going to refer to it

22   now as ERISA -- that ERISA was enacted and imposed

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

20

1    certain requirements with respect to the

2    administration?

3        A    No, it never had anything to do with my

4    responsibilities.

5        Q    It was your understanding -- I'm sorry --

6    it was your understanding that ERISA had nothing to

7    do with your responsibilities?

8        A    It was my understanding I had nothing to

9    do with ERISA.  That was a legal matter, if

10   anything, not an accounting matter.

11       Q    Is that still your understanding today, as

12   you sit here today?

13       A    Yes, my position is still the same.

14       Q    Your belief is the same, that ERISA has

15   nothing to do with the plan administration

16   responsibilities?

17       A    Not during my tenure.

18            MR. KOLKER:  Objection to form.

19   BY MR. ROSE:

20       Q    He's objected.  You can answer.

21       A    Pardon?

22       Q    Would you like the question reread?

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

21

1          (The record was reread as follows:

2          "Question:  Your belief is the same, that

3          ERISA has nothing to do with the plan

4          administration responsibilities?")

5     A    I was not aware that I was responsible for

6  ERISA during that period or any period since then.

7  BY MR. ROSE:

8     Q    When you say responsible for ERISA, what

9  do you mean?  I mean, you're not responsible for the

10  passage of it.  That was Congress.  You're not

11  responsible for issuing regulations.  That's the

12  Department of Labor, IRS's and PBGC's

13  responsibility.

14          What do you mean, that it --

15          MR. ROSE:  I'm sorry, what was his

16  response?

17          (The record was read as follows:

18          "Answer:  I was not aware that I was

19          responsible for ERISA during that

20          period or any period since then.")

21  BY MR. ROSE:

22     Q    What did you mean when you said you were

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

58

1       A     The trustees.

2    BY MR. ROSE:

3       Q     The trustees were responsible for the

4    investments.

5       A     They indicated where the money was to go.

6       Q     How often did the trustees give such

7    directions?

8       A     Whenever a certificate matured, it was

9    presented to the trustees, who -- one union trustee

10   and one contractor trustee signed the check to put

11   the money in the bank, or they signed cards to open

12   an account.

13      Q     Did the Fund have a statement of

14   investment policy?

15      A     It did not.

16      Q     Why not?

17      A     It just didn't.

18      Q     Did you ever raise it with the trustees?

19      A     I did not.  I'm not an investment

20   counselor.

21      Q     Did you ever suggest to the trustees they

22   get an investment counselor?

71

1    ten-year period.

2            MR. KOLKER:   Just a minute.   What's the

3    question?

4    BY MR. ROSE:

5        Q    My question is, did you ever work with

6    counsel on plan design issues?

7            MR. KOLKER:   Objection to the form.

8        A    Yes.

9    BY MR. ROSE:

10       Q    Okay.   Could you please give me examples

11   of when you worked with counsel on plan design

12   issues.

13       A    Whenever there was a need to have a plan

14   change or explanation, it usually came through

15   Mrs. Wagner.   We would discuss it, and she was very

16   familiar with the plan and would prepare information

17   for the trustees' consideration, which was also

18   conveyed to the counsel, I believe.

19           MR. BRAMLETTE:   Read back his answer,

20   please.

21           (The last answer was read as requested.)

22   BY MR. ROSE:

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

72

1    Q    Did Ms. Wagner have any special expertise

2  dealing with ERISA-covered Pension and Welfare

3  Funds?

4    A    Not to my knowledge.

5    Q    Did you ever suggest that she get some

6  additional education or attend seminars to keep up

7  with the developments in administration of ERISA

8  plans?

9    A    I did not.

10    Q    Why not?

11    A    She was pretty well savvy to what the Plan

12  was as it was.  She --

13    Q    How did you determine that she was savvy?

14    MR. KOLKER:  Well, just a minute.  You

15  interrupted him again.

16    A    There were no complaints from the

17  trustees.

18  BY MR. ROSE:

19    Q    Is that your measure of whether or not --

20    A    I would say so.

21    Q    -- Ms. Wagner knew what she was doing?

22    A    Well, in this case I think it was.

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

73

1      Q      Why is that?

2      A      Because she was very proficient at what

3   she did --

4      Q      And what did you base that --

5      A      -- in the context of her employment.

6      Q      And what did you base your assessment that

7   she was proficient in what she did?

8      A      Based on my knowledge of what she did.

9      Q      But you don't have any knowledge of ERISA,

10  correct?

11         MR. KOLKER:   Objection; that's

12  argumentative.

13  BY MR. ROSE:

14     Q      Did you testify earlier that you didn't

15  really know anything about ERISA?

16         MR. KOLKER:   Objection.   It's

17  argumentative and his earlier testimony is already a

18  part of the record.

19     Q      Well, let me ask you --

20         MR. KOLKER:   Let me finish my objection,

21  please.   I think I've asked you that already six

22  times.

DEPOSITION OF HARRY C. PERRY, JR.
CONDUCTED ON TUESDAY, AUGUST 7, 2007

74

1      MR. ROSE:  Well, I'm taking a deposition,

2  I'm asking questions --

3      MR. KOLKER:  You are taking a deposition,

4  and I am permitted to object.

5      MR. ROSE:  You certainly are.

6      MR. KOLKER:  So let me finish my

7  objection.

8      MR. ROSE:  Please do.

9      MR. KOLKER:  His testimony is part of the

10  record, and I object to your asking him to repeat

11  testimony he's already given.

12      MR. ROSE:  So that's asked and answered?

13  That your objection?

14      MR. KOLKER:  I'm not answering your

15  questions.

16      MR. ROSE:  Okay, good.

17  BY MR. ROSE:

18      Q    Would you like the question reread?

19          (The record was read as follows:

20          "Question:  Did you testify earlier that

21          you didn't really know anything about

22          ERISA?")

75

1      A      The answer is yes.

2  BY MR. ROSE:

3      Q      So upon what do you base your assessment

4  that Ms. Wagner was doing a proficient job?

5          MR. KOLKER:  Objection, asked and

6  answered.

7          MR. ROSE:  No, it actually wasn't

8  answered, but thank you.

9      A      Covered all bases, as far as I was

10  concerned, on the matters that were brought before

11  us.  There was no complaints from counsel, no

12  complaints from trustees.  And there was an

13  examination by the Department of Labor at one time

14  that didn't disclose any malfunctioning of the trust

15  agreement.

16  BY MR. ROSE:

17      Q      That was of the Welfare Fund, correct?

18      A      Was it the Welfare Fund?

19      Q      I'm asking you.

20      A      I don't remember.

21      Q      Okay.  Well, who would remember?

22      A      Pardon.

420

1    BY MR. KOLKER:

2        Q    All right, I want to show you the last

3    exhibit, Mr. Perry, that was used, Exhibit 36.  And

4    I want to ask you whether, to your knowledge, the

5    auditor's report that begins on page 9845 of this

6    exhibit was attached to the Form 5500 that was

7    submitted to the government.

8        A    It was.

9        Q    Was there any effort made by you to in any

10   way conceal the repayment of forfeited amounts to

11   any of the contractors?

12       A    None to my knowledge.

13       Q    Did you in fact disclose that repayment to

14   the government in the form of this filing that is

15   part of Exhibit 36?

16       A    It's recorded in that report.

17       Q    And I want to direct your attention to

18   page 9849 of the report.  A couple of inches from

19   the bottom is the topic labelled Forfeiture Refunds

20   Payable.  Do you see that?

21       A    I see that.

22       Q    And so this was included, I take it, in

# ATTACHMENT F

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND
#### (Southern Division)

| | | |
|---|---|---|
| **PLASTERERS' LOCAL UNION NO. 96 PENSION PLAN,** *et al.,* | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. PJM 06 CV 338** |
| **HAROLD PERRY,** *et al.,* | ) ) | |
| **Defendant.** | ) ) ) | |

### DEFENDANT HARRY C. PERRY, JR.'S
### REQUEST FOR ADMISSIONS TO PLASTERERS'
### LOCAL UNION NO. 96 PENSION PLAN ("PLAINTIFF")

Defendant Harry C. Perry, Jr. through counsel, hereby submits his First Request for Admissions to Plasterers' Local Union No. 96 Pension Plan pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedures.  It is requested that Plaintiff admit or deny the following within 30 days.

#### INSTRUCTIONS

1.    These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objections that may be made at trial to the introduction of evidence by Plaintiff on subjects covered by these Requests, nor shall they be deemed an admission at the trial of the relevance or materiality of any of the matters covered by the Requests.

2.    These Requests for Admissions are to be regarded as continuing.  You are requested to provide, by way of supplementary responses, any additional information, most notably that specified under Rule 26(e) of the Federal rules of Civil Procedure, that may

hereinafter be obtained by you or any person acting on your behalf, which will augment or otherwise modify your response.

3.     In addition to providing supplementary and amended answers as required by FRCP 26(e), it is requested that if you subsequently obtain further or different information relevant to any of your responses, you so advise counsel for Defendant Perry promptly and at least two months before trial.  If you object for any reason to providing such supplementary and amended responses, it is requested that you so advise counsel for Defendant Perry at the time that you serve your original response to these requests for admissions.

4.     Any objections or denials shall comport with the provisions of Rule 36, Fed. R. Civ. P., and shall specifically state the reason(s) for any objection, and any failure to admit or deny the matter shall set forth with specificity the reason(s) why Plaintiff cannot admit or deny the matter.

5.     In the event that any request is denied in whole or in part, Plaintiff should set forth in detail the reasons for such denial and identify the persons having knowledge thereof and the documents relating thereto.

6.     If it is claimed that a response to any request for admission calls for information or any identification or production that are privileged, work product or otherwise protected from disclosure and such privilege or work product is asserted, Defendant Perry requests that Plaintiff, within thirty (30) days of service of such request for admission or at a time mutually agreed upon by the parties, identify the nature of the privilege (including work product) that is being claimed and provided the following information:

(a)     for documents:  (1) name and capacity of each author of the document; (2) the name and capacity of each person designated as an addressee of the document or otherwise

2

receiving a copy of the document; (3) the general subject matter of the document; (4) the date of the document; and (5) such other information as sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.

(b)    for oral communication:    (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; and (3) the general subject matter of the communication.

7.    Any part of a response to which you do not claim privilege or work product should be given in full.

<u>**DEFINITIONS**</u>

1.    The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), including without limitation, any paper, book, account, photograph, blueprint, drawing sketch, schematic, agreement, contract, collective bargaining agreement, memorandum, press release, circular advertising material, correspondence, letter, telegram, telex, object, report, opinion, investigation, record, transcript, hearing, meeting study, note, notation, working paper, summary, inter-office communication, diary, chart, minute, index sheet, computer software, invoice, records or recording, or summary of any telephone or other conversation, or of any interview or of any conference, or any other written, recorded,

3

transcribed, punched, taped, filmed or graphic matter, including any electronically stored information in computerized format, computer files, or e-mail of which you have or have had possession, custody or control.

2.     The term "person or entity" means natural persons, businesses, proprietorship, partnership, firms, corporations, institutions, employee benefit plans, bodies, joint ventures, other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, any other group or combination acting as an entity, and any representative or agent of the foregoing.

3.     The word "communication" means any manner or form of information or message transmission, however produced or reproduced, whether by "document" or orally or otherwise, which is made, distributed or circulated between or among persons, or data storage or processing units, and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to a communication.

4.     The word "Plaintiff" refers to Plasterers' Local Union No. 96, Pleasant, Trustee and/or James Miller, Trustee.

5.     The word "you" and "your" refers to Plaintiff.

6.     The word "any" means each and every as well as any one.

7.     The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

8.     The word "identify" means:

(a)     with respect to a natural person, to state the full name, present or last known title or position, business affiliation, and business address.

4

1484922.1

(b)    with respect to a corporation, to state the corporation's full name and address.

(c)    with respect to a person or entity other than a natural person or corporation, to state its proper name or designation and its address.

9.    The word "date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

10.    The word "Fund" means the pension fund of Plasterers' Local Union No. 96.

## REQUEST FOR ADMISSIONS

1.    Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by letter dated January 10, 1990 (Scholar-00174-5), as follows:

> "With regard to forfeitures, in a money purchase plan forfeitures must be used to reduce employer contributions. The plan does not now specify how this is carried out. You should give the specific employer the benefit of the forfeiture the following year."

ADMIT _____        DENY

2.    Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by, though Lee Wagner, in a letter dated January 9, 1992 (PerryFirst 00052), as follows:

> "With regard to your second inquiry, contractors who receive forfeits are legally responsible to repay the Plan if the employee returns to service."

ADMIT_____        DENY _____

3.    Admit that notes of the January 25, 1994 of the Plasterer's Pension and Welfare Fund Joint Trustee Meeting created at or about the time of the meeting (0209) state as follows:

> "Pension Fund Contractor COntributions [*sic*]: Trustees approved distribution of funds as detailed on worksheets provided by Administrator's office."

1484922.1

4.     Admit that the Minutes of the January 25, 1994 meeting of the Trustees of Plasterer Local Union No. 96 Pension and Welfare Funds (PerrySecond 01055) was signed by three board contractor trustees and two union trustees and states, as follows:

> "4.     The Trustees approved the disposition of funds as outlined in worksheets provided by the Administrator."

ADMIT_____          DENY _____

5.     Admit that the checks disbursing funds to the contractor employees were signed by two of the trustees.

ADMIT_____          DENY _____

6.     Admit that the Form 5500 filed with the Internal Revenue Service for the year 1994 (PerrySecond 09836-52) attached as an exhibit thereto a report of the independent audit of the fund by Bailey & Bailey, CPA, referencing the return of the forfeited funds made in 1994.

ADMIT_____          DENY _____

7.     Admit that no documents exist which contradict the statement made by Ms.  Lee Wagner at her deposition in this case to the effect that notices were sent to all plan participants in 1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

8.     Admit that no witness known to the Plaintiffs has contradicted the statement made by Ms.  Lee Wagner at her deposition in this case to the effect that notices were sent to all plan participants in 1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

9.     Admit that the Trustees approved the investment of Plan assets in certificates of deposit at a Trustee meeting held on July 23, 1991  (0189)

ADMIT_____          DENY _____

1484922.1

10. Admit that the Trustees approved the investment of Plan assets in certificates of deposit and US Treasury Bills at a Trustee meeting held on November 9, 1995. (PerrySecond 01034).

ADMIT_____          DENY _____

11. Admit that only the Trustees had signature authority over the Fund bank accounts used to purchase certificates of deposit for the Fund.

ADMIT_____          DENY _____

12. Admit that all assets owned by the fund during the years 1994  to 2004 were itemized on schedules included within the annual audit reports prepared by the independent auditor, Bailey & Bailey, CPA.

ADMIT_____          DENY _____

13. Admit that for each of the years 1994 to 2004 inclusive, the Form 5500 filed by the Fund with the Internal Revenue Service included the annual audit report prepared by Bailey & Bailey, CPA for that year.

ADMIT_____          DENY _____

14. Admit that Harry Perry, Jr. did not take any action to conceal the repayment of forfeited funds to contractor trustees.

ADMIT_____          DENY _____

15. Admit that Harry Perry, Jr. did not take any action to conceal the nature, amount or location of Fund assets.

ADMIT_____          DENY _____

16. Admit that Keith Hickman was a Trustee of the Fund  continuously from 1999 through at least February 10, 2006.

ADMIT_____          DENY _____

7

17.   Admit that Edward Pepper was a Trustee of the Fund continuously from 199

through at least February 10, 2006.

ADMIT_____     DENY _____

Respectfully submitted,

Dated:  September 24, 2007

/s/ Peter R. Kolker_____
Peter R. Kolker (MD Bar No. 00906)
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5802
Telephone:   (202) 778-1812
Facsimile:    (202) 822-8106
E-mail:  pkolker@zuckerman.com

*Attorney for Defendant Harry C. Perry, Jr.*

1484922.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2007, I served a copy of the foregoing

*DEFENDANT HARRY C. PERRY, JR.'S REQUEST FOR ADMISSIONS TO PLASTERERS' LOCAL UNION NO. 96 PENSION PLAN ("PLAINTIFF")* on the following persons via hand delivery or electronically:

| VIA ELECTRONICALLY TODAY AND HAND DELIVERY ON SEPTEMBER 25, 2007 | VIA ELECTRONICALLY TODAY |
|---|---|
| Jonathan G. Rose, Esq.<br>SHEPPARD MULLIN RICHTER & HAMPTON<br>1300 "I" Street, N.W.<br>11th Floor East<br>Washington, D.C.  20005<br>(202) 772-5390<br>*E-Mail: jrose@sheppardmullin.com*<br><br>*Counsel for Plaintiffs* | John C. Hayes, Jr., Esq.<br>John W. Bramlette, Esq.<br>NIXON PEABODY LLP<br>401 Ninth Street, N.W., Suite 900<br>Washington, D.C.  20004-2128<br>(202) 585-8000<br>*E-Mail: dhayes@nixonpeabody.com*<br>*E-Mail: jbramlett@nixonpeabody.com*<br><br>*Counsel for Defendants Edgar Pepper, James S. Letora, Donald A. Molnar and Roland Beddow* |

/s/ Peter R. Kolker
_____
                    Peter R. Kolker

9

1484922.1

# ATTACHMENT G

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Southern Division)

|  |  |
|---|---|
| PLASTERERS' LOCAL UNION NO. 96 PENSION PLAN, *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> HAROLD PERRY, *et al.*, <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) <br><br> **Civil Action No.** <br> **PJM 06 CV 338** |

## DEFENDANT HARRY C. PERRY, JR.'S REQUEST FOR
## ADMISSIONS TO JAMES MILLER, TRUSTEE ("PLAINTIFF")

Defendant Harry C. Perry, Jr. through counsel, hereby submits his First Request for Admissions to James Miller, Trustee pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedures. It is requested that Plaintiff admit or deny the following within 30 days.

### INSTRUCTIONS

1.  These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objections that may be made at trial to the introduction of evidence by Plaintiff on subjects covered by these Requests, nor shall they be deemed an admission at the trial of the relevance or materiality of any of the matters covered by the Requests.

2.  These Requests for Admissions are to be regarded as continuing. You are requested to provide, by way of supplementary responses, any additional information, most notably that specified under Rule 26(e) of the Federal rules of Civil Procedure, that may hereinafter be obtained by you or any person acting on your behalf, which will augment or otherwise modify your response.

3.      In addition to providing supplementary and amended answers as required by FRCP 26(e), it is requested that if you subsequently obtain further or different information relevant to any of your responses, you so advise counsel for Defendant Perry promptly and at least two months before trial.  If you object for any reason to providing such supplementary and amended responses, it is requested that you so advise counsel for Defendant Perry at the time that you serve your original response to these requests for admissions.

4.      Any objections or denials shall comport with the provisions of Rule 36, Fed. R. Civ. P., and shall specifically state the reason(s) for any objection, and any failure to admit or deny the matter shall set forth with specificity the reason(s) why Plaintiff cannot admit or deny the matter.

5.      In the event that any request is denied in whole or in part, Plaintiff should set forth in detail the reasons for such denial and identify the persons having knowledge thereof and the documents relating thereto.

6.      If it is claimed that a response to any request for admission calls for information or any identification or production that are privileged, work product or otherwise protected from disclosure and such privilege or work product is asserted, Defendant Perry requests that Plaintiff, within thirty (30) days of service of such request for admission or at a time mutually agreed upon by the parties, identify the nature of the privilege (including work product) that is being claimed and provided the following information:

(a)      for documents:  (1) name and capacity of each author of the document; (2) the name and capacity of each person designated as an addressee of the document or otherwise receiving a copy of the document; (3) the general subject matter of the document; (4) the date of the document; and (5) such other information as sufficient to identify the document for a

2

subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.

      (b)   for oral communication:   (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; and (3) the general subject matter of the communication.

      7.   Any part of a response to which you do not claim privilege or work product should be given in full.

## DEFINITIONS

      1.   The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), including without limitation, any paper, book, account, photograph, blueprint, drawing sketch, schematic, agreement, contract, collective bargaining agreement, memorandum, press release, circular advertising material, correspondence, letter, telegram, telex, object, report, opinion, investigation, record, transcript, hearing, meeting study, note, notation, working paper, summary, inter-office communication, diary, chart, minute, index sheet, computer software, invoice, records or recording, or summary of any telephone or other conversation, or of any interview or of any conference, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, including any electronically stored

information in computerized format, computer files, or e-mail of which you have or have had possession, custody or control.

2.     The term "person or entity" means natural persons, businesses, proprietorship, partnership, firms, corporations, institutions, employee benefit plans, bodies, joint ventures, other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, any other group or combination acting as an entity, and any representative or agent of the foregoing.

3.     The word "communication" means any manner or form of information or message transmission, however produced or reproduced, whether by "document" or orally or otherwise, which is made, distributed or circulated between or among persons, or data storage or processing units, and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to a communication.

4.     The word "Plaintiff" refers to Plasterers' Local Union No. 96, Pleasant, Trustee and/or James Miller, Trustee.

5.     The word "you" and "your" refers to Plaintiff.

6.     The word "any" means each and every as well as any one.

7.     The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

8.     The word "identify" means:

(a)     with respect to a natural person, to state the full name, present or last known title or position, business affiliation, and business address.

(b)     with respect to a corporation, to state the corporation's full name and address.

4

1485689.1

(c)    with respect to a person or entity other than a natural person or corporation, to state its proper name or designation and its address.

9.    The word "date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

10.    The word "Fund" means the pension fund of Plasterers' Local Union No. 96.

### REQUEST FOR ADMISSIONS

1.    Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by letter dated January 10, 1990 (Scholar-00174-5), as follows:

> "With regard to forfeitures, in a money purchase plan forfeitures must be used to reduce employer contributions.  The plan does not now specify how this is carried out.  You should give the specific employer the benefit of the forfeiture the following year."

ADMIT _____        DENY

2.    Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by, though Lee Wagner, in a letter dated January 9, 1992 (PerryFirst 00052), as follows:

> "With regard to your second inquiry, contractors who receive forfeits are legally responsible to repay the Plan if the employee returns to service."

ADMIT_____        DENY _____

3.    Admit that notes of the January 25, 1994 of the Plasterer's Pension and Welfare Fund Joint Trustee Meeting created at or about the time of the meeting (0209) state as follows:

> "Pension Fund Contractor COntributions [*sic*]: Trustees approved distribution of funds as detailed on worksheets provided by Administrator's office."

4.    Admit that the Minutes of the January 25, 1994 meeting of the Trustees of Plasterer Local Union No. 96 Pension and Welfare Funds (PerrySecond 01055) was signed by three board contractor trustees and two union trustees and states, as follows:

5

"4.     The Trustees approved the disposition of funds as outlined
in worksheets provided by the Administrator."

ADMIT_____          DENY _____

5.      Admit that the checks disbursing funds to the contractor employees were signed
by two of the trustees.

ADMIT_____          DENY _____

6.      Admit that the Form 5500 filed with the Internal Revenue Service for the year
1994 (PerrySecond 09836-52) attached as an exhibit thereto a report of the independent audit of
the fund by Bailey & Bailey, CPA, referencing the return of the forfeited funds made in 1994.

ADMIT_____          DENY _____

7.      Admit that no documents exist which contradict the statement made by Ms.  Lee
Wagner at her deposition in this case to the effect that notices were sent to all plan participants in
1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

8.      Admit that no witness known to the Plaintiffs has contradicted the statement made
by Ms.  Lee Wagner at her deposition in this case to the effect that notices were sent to all plan
participants in 1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

9.      Admit that the Trustees approved the investment of Plan assets in certificates of
deposit at a Trustee meeting held on July 23, 1991  (0189)

ADMIT_____          DENY _____

10.     Admit that the Trustees approved the investment of Plan assets in certificates of
deposit and US Treasury Bills at a Trustee meeting held on November 9, 1995.  (PerrySecond
01034).

ADMIT_____          DENY _____

6

11.    Admit that only the Trustees had signature authority over the Fund bank accounts used to purchase certificates of deposit for the Fund.

ADMIT_____          DENY _____

12.    Admit that all assets owned by the fund during the years 1994  to 2004 were itemized on schedules included within the annual audit reports prepared by the independent auditor, Bailey & Bailey, CPA.

ADMIT_____          DENY _____

13.    Admit that for each of the years 1994 to 2004 inclusive, the Form 5500 filed by the Fund with the Internal Revenue Service included the annual audit report prepared by Bailey & Bailey, CPA for that year.

ADMIT_____          DENY _____

14.    Admit that Harry Perry, Jr. did not take any action to conceal the repayment of forfeited funds to contractor trustees.

ADMIT_____          DENY _____

15.    Admit that Harry Perry, Jr. did not take any action to conceal the nature, amount or location of Fund assets.

ADMIT_____          DENY _____

16.    Admit that Keith Hickman was a Trustee of the Fund  continuously from 1999 through at least February 10, 2006.

ADMIT_____          DENY _____

17.    Admit that Edward Pepper was a Trustee of the Fund continuously from 199 through at least February 10, 2006.

ADMIT_____          DENY _____

1485689.1

Respectfully submitted,

Dated:  September 24, 2007

/s/ Peter R. Kolker
Peter R. Kolker (MD Bar No. 00906)
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5802
Telephone:   (202) 778-1812
Facsimile:    (202) 822-8106
E-mail:  pkolker@zuckerman.com

*Attorney for Defendant Harry C. Perry, Jr.*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2007, I served a copy of the foregoing *DEFENDANT HARRY C. PERRY, JR.'S REQUEST FOR ADMISSIONS TO JAMES MILLER, TRUSTEE ("PLAINTIFF")* on the following persons via hand delivery or electronically:

| | |
|---|---|
| **VIA ELECTRONICALLY TODAY AND HAND DELIVERY ON SEPTEMBER 25, 2007** | **VIA ELECTRONICALLY TODAY** |
| Jonathan G. Rose, Esq.<br>SHEPPARD MULLIN RICHTER & HAMPTON<br>1300 "I" Street, N.W.<br>11th Floor East<br>Washington, D.C. 20005<br>(202) 772-5390<br>*E-Mail: jrose@sheppardmullin.com* | John C. Hayes, Jr., Esq.<br>John W. Bramlette, Esq.<br>NIXON PEABODY LLP<br>401 Ninth Street, N.W., Suite 900<br>Washington, D.C. 20004-2128<br>(202) 585-8000<br>*E-Mail: dhayes@nixonpeabody.com*<br>*E-Mail: jbramlett@nixonpeabody.com* |
| *Counsel for Plaintiffs* | *Counsel for Defendants Edgar Pepper, James S. Letora, Donald A. Molnar and Roland Beddow* |

/s/ Peter R. Kolker
Peter R. Kolker

9

1485689.1

# ATTACHMENT H

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| PLASTERERS' LOCAL UNION NO. 96 PENSION PLAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HAROLD PERRY, *et al.*,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
PJM 06 CV 338

## DEFENDANT HARRY C. PERRY, JR.'S REQUEST FOR
## ADMISSIONS TO CHERIE PLEASANT, TRUSTEE ("PLAINTIFF")

Defendant Harry C. Perry, Jr. through counsel, hereby submits his First Request for Admissions to Cherie Pleasant, Trustee pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedures. It is requested that Plaintiff admit or deny the following within 30 days.

### INSTRUCTIONS

1.      These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objections that may be made at trial to the introduction of evidence by Plaintiff on subjects covered by these Requests, nor shall they be deemed an admission at the trial of the relevance or materiality of any of the matters covered by the Requests.

2.      These Requests for Admissions are to be regarded as continuing. You are requested to provide, by way of supplementary responses, any additional information, most notably that specified under Rule 26(e) of the Federal rules of Civil Procedure, that may hereinafter be obtained by you or any person acting on your behalf, which will augment or otherwise modify your response.

1485678.1

3.    In addition to providing supplementary and amended answers as required by FRCP 26(e), it is requested that if you subsequently obtain further or different information relevant to any of your responses, you so advise counsel for Defendant Perry promptly and at least two months before trial.  If you object for any reason to providing such supplementary and amended responses, it is requested that you so advise counsel for Defendant Perry at the time that you serve your original response to these requests for admissions.

4.    Any objections or denials shall comport with the provisions of Rule 36, Fed. R. Civ. P., and shall specifically state the reason(s) for any objection, and any failure to admit or deny the matter shall set forth with specificity the reason(s) why Plaintiff cannot admit or deny the matter.

5.    In the event that any request is denied in whole or in part, Plaintiff should set forth in detail the reasons for such denial and identify the persons having knowledge thereof and the documents relating thereto.

6.    If it is claimed that a response to any request for admission calls for information or any identification or production that are privileged, work product or otherwise protected from disclosure and such privilege or work product is asserted, Defendant Perry requests that Plaintiff, within thirty (30) days of service of such request for admission or at a time mutually agreed upon by the parties, identify the nature of the privilege (including work product) that is being claimed and provided the following information:

(a)    for documents:  (1) name and capacity of each author of the document; (2) the name and capacity of each person designated as an addressee of the document or otherwise receiving a copy of the document; (3) the general subject matter of the document; (4) the date of the document; and (5) such other information as sufficient to identify the document for a

2

subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and any other recipient to each other.

(b)   for oral communication:   (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; and (3) the general subject matter of the communication.

7.   Any part of a response to which you do not claim privilege or work product should be given in full.

### DEFINITIONS

1.   The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), including without limitation, any paper, book, account, photograph, blueprint, drawing sketch, schematic, agreement, contract, collective bargaining agreement, memorandum, press release, circular advertising material, correspondence, letter, telegram, telex, object, report, opinion, investigation, record, transcript, hearing, meeting study, note, notation, working paper, summary, inter-office communication, diary, chart, minute, index sheet, computer software, invoice, records or recording, or summary of any telephone or other conversation, or of any interview or of any conference, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, including any electronically stored

3

information in computerized format, computer files, or e-mail of which you have or have had possession, custody or control.

2.      The term "person or entity" means natural persons, businesses, proprietorship, partnership, firms, corporations, institutions, employee benefit plans, bodies, joint ventures, other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, any other group or combination acting as an entity, and any representative or agent of the foregoing.

3.      The word "communication" means any manner or form of information or message transmission, however produced or reproduced, whether by "document" or orally or otherwise, which is made, distributed or circulated between or among persons, or data storage or processing units, and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to a communication.

4.      The word "Plaintiff" refers to Plasterers' Local Union No. 96, Pleasant, Trustee and/or James Miller, Trustee.

5.      The word "you" and "your" refers to Plaintiff.

6.      The word "any" means each and every as well as any one.

7.      The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

8.      The word "identify" means:

(a)      with respect to a natural person, to state the full name, present or last known title or position, business affiliation, and business address.

(b)      with respect to a corporation, to state the corporation's full name and address.

(c)     with respect to a person or entity other than a natural person or corporation, to state its proper name or designation and its address.

9.     The word "date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

10.     The word "Fund" means the pension fund of Plasterers' Local Union No. 96.

### REQUEST FOR ADMISSIONS

1.     Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by letter dated January 10, 1990 (Scholar-00174-5), as follows:

> "With regard to forfeitures, in a money purchase plan forfeitures must be used to reduce employer contributions. The plan does not now specify how this is carried out. You should give the specific employer the benefit of the forfeiture the following year."

ADMIT _____          DENY

2.     Admit that counsel to the Fund, Samuel Scholar, advised Mr. Perry by, though Lee Wagner, in a letter dated January 9, 1992 (PerryFirst 00052), as follows:

> "With regard to your second inquiry, contractors who receive forfeits are legally responsible to repay the Plan if the employee returns to service."

ADMIT_____          DENY _____

3.     Admit that notes of the January 25, 1994 of the Plasterer's Pension and Welfare Fund Joint Trustee Meeting created at or about the time of the meeting (0209) state as follows:

> "Pension Fund Contractor COntributions [*sic*]: Trustees approved distribution of funds as detailed on worksheets provided by Administrator's office."

4.     Admit that the Minutes of the January 25, 1994 meeting of the Trustees of Plasterer Local Union No. 96 Pension and Welfare Funds (PerrySecond 01055) was signed by three board contractor trustees and two union trustees and states, as follows:

1485678.1

"4.     The Trustees approved the disposition of funds as outlined
in worksheets provided by the Administrator."

ADMIT_____          DENY _____

5.     Admit that the checks disbursing funds to the contractor employees were signed by two of the trustees.

ADMIT_____          DENY _____

6.     Admit that the Form 5500 filed with the Internal Revenue Service for the year 1994 (PerrySecond 09836-52) attached as an exhibit thereto a report of the independent audit of the fund by Bailey & Bailey, CPA, referencing the return of the forfeited funds made in 1994.

ADMIT_____          DENY _____

7.     Admit that no documents exist which contradict the statement made by Ms. Lee Wagner at her deposition in this case to the effect that notices were sent to all plan participants in 1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

8.     Admit that no witness known to the Plaintiffs has contradicted the statement made by Ms. Lee Wagner at her deposition in this case to the effect that notices were sent to all plan participants in 1994 describing the forfeiture of funds.

ADMIT_____          DENY _____

9.     Admit that the Trustees approved the investment of Plan assets in certificates of deposit at a Trustee meeting held on July 23, 1991  (0189)

ADMIT_____          DENY _____

10.     Admit that the Trustees approved the investment of Plan assets in certificates of deposit and US Treasury Bills at a Trustee meeting held on November 9, 1995.  (PerrySecond 01034).

ADMIT_____          DENY _____

6

11.     Admit that only the Trustees had signature authority over the Fund bank accounts used to purchase certificates of deposit for the Fund.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

12.     Admit that all assets owned by the fund during the years 1994  to 2004 were itemized on schedules included within the annual audit reports prepared by the independent auditor, Bailey & Bailey, CPA.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

13.     Admit that for each of the years 1994 to 2004 inclusive, the Form 5500 filed by the Fund with the Internal Revenue Service included the annual audit report prepared by Bailey & Bailey, CPA for that year.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

14.     Admit that Harry Perry, Jr. did not take any action to conceal the repayment of forfeited funds to contractor trustees.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

15.     Admit that Harry Perry, Jr. did not take any action to conceal the nature, amount or location of Fund assets.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

16.     Admit that Keith Hickman was a Trustee of the Fund  continuously from 1999 through at least February 10, 2006.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

17.     Admit that Edward Pepper was a Trustee of the Fund continuously from 199 through at least February 10, 2006.

ADMIT\_\_\_\_\_          DENY \_\_\_\_\_

1485678.1

Respectfully submitted,

Dated:  September 24, 2007

/s/ Peter R. Kolker
Peter R. Kolker (MD Bar No. 00906)
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-5802
Telephone:   (202) 778-1812
Facsimile:    (202) 822-8106
E-mail:  pkolker@zuckerman.com

*Attorney for Defendant Harry C. Perry, Jr.*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September 2007, I served a copy of the foregoing

*DEFENDANT HARRY C. PERRY, JR.'S REQUEST FOR ADMISSIONS TO CHERIE PLEASANT, TRUSTEE ("PLAINTIFF")* on the following persons via hand delivery or electronically:

| | |
|---|---|
| **VIA ELECTRONICALLY TODAY AND HAND DELIVERY ON SEPTEMBER 25, 2007** | **VIA ELECTRONICALLY TODAY** |
| Jonathan G. Rose, Esq.<br>SHEPPARD MULLIN RICHTER & HAMPTON<br>1300 "I" Street, N.W.<br>11th Floor East<br>Washington, D.C.  20005<br>(202) 772-5390<br>*E-Mail: jrose@sheppardmullin.com*<br><br>*Counsel for Plaintiffs* | John C. Hayes, Jr., Esq.<br>John W. Bramlette, Esq.<br>NIXON PEABODY LLP<br>401 Ninth Street, N.W., Suite 900<br>Washington, D.C.  20004-2128<br>(202) 585-8000<br>*E-Mail:  dhayes@nixonpeabody.com*<br>*E-Mail:  jbramlett@nixonpeabody.com*<br><br>*Counsel for Defendants Edgar Pepper,*<br>*James S. Letora, Donald A. Molnar and*<br>*Roland Beddow* |

/s/ Peter R. Kolker
Peter R. Kolker

1485678.1