**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **PLASTERERS' LOCAL UNION NO. 96** | * |
| **PENSION PLAN**, *et al.* | * |
| | * |
| Plaintiffs | * |
| | * |
| v. | *    Civil No. **PJM 06-338** |
| | * |
| **HAROLD PERRY**, *et al.*, | * |
| | * |
| Defendants | * |

**OPINION**

Plaintiffs Plasterers' Local Union No. 96 Pension Plan ("Plan") and Cherie Pleasant and James Miller as Trustees of the Plan have sued Defendants Edgar Pepper, James Lertora, Donald Molnar, and Ronald Beddow, other Plan Trustees (collectively "Defendant Trustees"), and Harold Perry, Plan Administrator, alleging that Defendants violated multiple provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.*.[1]

A number of motions for summary judgment are before the Court: Defendant Trustees' First Motion for Partial Summary Judgment [Paper No. 56], Plaintiffs' Motion for Partial Summary Judgment [Paper No. 89], Defendant Trustees' Second Motion for Partial Summary Judgment [Paper No. 90], and Defendant Perry's Motion for Partial Summary Judgment [Paper Nos. 87 & 88]. Although styled as motions for partial summary judgment, in sum the motions

---

[1] The Complaint also names as Defendants Lee Wagner, Perry's assistant, and Samuel Scholar, Plan counsel, who were previously dismissed from the case.

raise issues that would, if all granted, be dispositive with respect to all counts.   Thus, rather than

consider each motion independently, the Court evaluates issue by issue the issues raised in the

several motions.  For the following reasons, all the motions will be DENIED.

I.

Plaintiffs allege that Defendants breached their fiduciary duties by failing to diversify

Plan investments in violation of 29 U.S.C. § 1104(a)(1)(c); by not acting prudently with respect

to their investment decisions in violation of 29 U.S.C. § 1104(a)(1)(B), and by causing Plan

assets to be returned to contributing employers in violation of 29 U.S.C. 1104(a)(1)(A) and 29

U.S.C. § 1106(a)(1)(D).  Plaintiffs further contend that the refunds to the employers contravened

provisions of the Plan and, as such, constituted a breach of Defendants' fiduciary duty to follow

Plan documents in violation of 29 U.S.C. § 1104(a)(1)(D).[2]

---

[2]       The specific counts set forth in the Complaint are as follows:
As to Perry, Plaintiffs allege that he breached his fiduciary duties by improperly administering the payment of Plan benefits, failing to notify the Trustees of the need to modify Plan governing documents or administrative procedures so as to comply with ERISA, and failing to take remedial action to remedy these breaches (Count I – ERISA § 404(a)(1)(D); by investing all Plan assets in low-yield certificate of deposit, money market accounts, and U.S. Treasury Bonds, thereby failing to ensure that Plan assets were in a diversified portfolio or otherwise prudently invested as required by ERISA (Count II – ERISA § 404(a)(1)(B)); and by causing Plan assets to be paid directly to participating employers in violation of the terms of the Plan and ERISA provisions (Count III – 404(a)(1)(A) and (D)).
As to Defendant Trustees, Plaintiffs allege that they breached their fiduciary duties by failing to properly oversee administration of the Plan when they did not adequately investigate Perry's qualifications and actions with regard to administration of the Plan (Count IV – ERISA § 404(a)(1)(B); by failing to undertake independent research with regard to the investments in which Plan assets were invested so as to ensure that such investments were reasonable in terms of the funding requirements of the Plan and the rate of return being earned and by improperly relying on Perry's recommendations by failing to adequately inquire as to his qualifications with regard to managing investment assets and ERISA plans (Count V – ERISA § 404(a)(1)(B); by allowing Plan assets to be paid directly to participating employers in violation of ERISA's exclusive purpose provision and in violation of the terms of the Plan as well as by failing to undertake remedial action to recover same from the employers (Count VI – ERISA §404(a)(1)(A) and (D)); by failing to take remedial action as to the other alleged breaches (Count VII – ERISA § 405(a)); and by causing Plan assets to be paid directly to employers, which were parties in interest such that the transactions constituted one or more prohibited transaction (Count VIII – ERISA § 406(A)).

These are the relevant facts:

Plasterers' Local Union No. 96 Pension Plan is a pension plan that was set up for the benefit of union members. The Plan, a multiemployer pension plan under ERISA, is administered by a Board of Trustees consisting of both employer-appointed and union-appointed trustees. Plaintiffs' Pleasant and Miller are current trustees of the Plan.[3] At all times relevant to this suit, Defendant Perry, who operated an accounting business known as Harry C. Perry and Associates, served as Plan administrator.[4] Defendants Molnar and Beddow were members of the Board of Trustees as early as 1994, continuing into 1999. Defendant Lertora served as a trustee from 1994 until his resignation in 2004. At the time the present action was initiated, Defendant Pepper was a member of the Board. By virtue of their respective positions as Plan administrator and trustees, Defendants unquestionably had certain fiduciary duties under ERISA with regard to the administration of the Plan and the management of Plan assets.

As to Defendants' alleged failure to diversify or act prudently with respect to Plan assets, in 1994, 92.7% of Plan assets were invested in certificates of deposit due to mature in 1995. The remaining 7.3% of Plan assets were held in bonds. As of September 30, 1995, 78.8% of the total value of Plan assets was invested in U.S. Treasury Bills. Despite an alternative more diversified investment strategy recommended by Morgan Stanley in April 2002 at a board meeting, the Plan trustees unanimously rejected this strategy.

---

[3]  It is not entirely clear exactly when Pleasant and Miller became trustees, but for present purposes the Court will assume they became such sometime after the events on which their claims are based.

[4]  While the record suggests that Perry was no longer Plan administrator at the time Pleasant and Miller became trustees, it is unclear when and under what circumstances he ceased to function in this capacity.

As to the alleged improper transfer to contributing employers, Plaintiffs note that in 1994 the Trustees of the Plan approved the return of funds to contributing employers based upon the theory that funds which had been contributed to the Plan on behalf of employees who never became vested in the Plan should be forfeited back to the contributing employers. Approximately $121,000 reverted back to contributing employers on this basis, checks in that amount being signed by Trustees Lertora and Molnar and sent, among others, to a company in which Defendant Lertora owned a majority interest.

Plaintiffs submit that these actions give rise to their claims for Defendant's failure to diversify Plan assets. They seek $432,960.62 plus interest as damages for the three-year period ending December 31, 2005, *i.e.*, the end of the last full accounting year prior to initiation of this suit, for Defendants' alleged failure to diversify Plan assets. They demand $335,224 for Defendants' alleged improper distribution of Plan assets to contributing employers. They also seek interest, attorneys' fees and the costs of suit.

## II.

Plaintiffs ask for partial summary judgment on the aforementioned grounds. Defendant Trustees and Perry ask for summary judgment on the grounds that these causes of action are barred by the statute of limitations period.

## III.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine

issue of material fact exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material

fact. *Id.* at 323. Once the moving party meets this burden, the non-movant may not rest upon its

mere allegations but must come forward with specific facts showing that there is a genuine issue

for trial. *See* Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.,* 475 U.S. 574, 587 (1986). Moreover, "'a mere scintilla of evidence is not enough to

create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting

*Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 640 (E.D. N.C. 1966), *aff'd*, 338 F.2d

987 (4th Cir. 1967)). The court is obligated, however, to view the facts and justifiable inferences

drawn from the facts in the light most favorable to the non-moving party. *See Adickes v. S.H.

Kress & Co.,* 398 U.S. 144, 157 (1970); *Matsushita Elec. Indus. Comp.*, 475 U.S. at 587-88.


## IV.

The Court deals first with Defendants' argument that Plaintiffs' claims are barred by

ERISA's statute of limitations. That provision, 29 U.S.C. § 1113, provides in relevant part that

an action for breach of a fiduciary duty or other ERISA violation may not be commenced after

the earlier of:

> (1) Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  As the United States Court of Appeals for the Third Circuit has noted, "'[t]his section thus creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge of the breach, and potentially extended to six years from the date of discovery in cases involving fraud or concealment.'"  *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 201 (3d Cir. 2006) (quoting *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996)).

Plaintiffs' claims essentially arise from two historical clusters: (1) the 1994 refunds made to contributing employers, and (2) decisions with respect to composition of the Plan's investment portfolio made between 1994 and 2005.  The Court considers the ERISA limitations period with respect to each.

A.

As to the 1994 refunds, Defendants argue that all of Plaintiffs' claims with respect to the refunds to the employers are time-barred because the transactions occurred in 1994 whereas suit was filed in 2006– well outside of the applicable 6-year statutory period.  Plaintiffs counter that they did not learn of the 1994 transactions until they became trustees in 2005 or 2006, and that

6

the "fraud or concealment" exception of the statute applies given the facts of this case, such that the 6 year limitations period did not begin to run until they discovered the transactions.[5]  They contend that, even if they are charged with having discovered the refunds on the date they became trustees in 2005 or 2006, such discovery clearly occurred within six years of commencement of this suit.

Defendants maintain that there is no record evidence that they concealed the disputed transactions and that, in fact, information pertaining to the refunds was contemporaneously disclosed in public documents and to Plan Participants.[6]  *See e.g.,* Def. Trustee's Resp. to Pls.' Mot., Ex. 12 (Board minutes reflecting decision to refund forfeitures to contributing employers); Pls.' Mot., Ex. 8 at Bates Number Perry Second 9836, 9839 (The Plan's 1994 IRS Form 5500 filed with the Internal Revenue Service, Department of Labor, and Pension Benefit Guaranty Corporation indicating at section 26a that the Plan's 1994 financial statements and the associated audit report conducted by an independent qualified certified accountant is attached); Pls.' Mot., Ex. 17 at Bates number Perry Second 9849 (Note 2 of the 1994 audit report stating: "During the plan years 1988 to 1992 forfeitures have accumulated in the plan.  In accordance with section 4.7 of the plan these forfeitures are to reduce future employer contributions.  During the year ended

---

[5] Plaintiffs allege that they discovered the 1994 refunds through a forensic audit conducted after they became trustees.  *See* Plf's Motion for Summary Judgment, Ex. 17 (Independent Auditor's Report dated June 2, 1995).

[6] Relying on *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F. 3d 197, 203-204 (3d Cir. 2006), Defendants also assert that Plaintiffs are barred from relying on the fraud or concealment exception because they failed to include specific factual allegations with respect to the same in their Complaint.  While it is true that the Complaint does not specifically plead concealment, the parties have conducted discovery with respect to this issue.  In addition, it is well established that the Court may liberally allow a plaintiff to amend a complaint.  The Court finds in this instance that there was no prejudice to Defendants by reason of any lack of specificity as to fraud in the Complaint, but insofar as it may be necessary, the Court will allow Plaintiffs to amend the Complaint, *nunc pro tunc*, to specifically allege concealment.

December 31, 1993, one employer offset contributions leaving a liability of $109,214.  During

the year ended December 31, 1994 checks were drawn to fourteen employers leaving a liability

of $521."); Def. Trustees' Resp. to Pls.' Mot., Ex. 3 (Wagner Dep. at 216:22-218:4) (suggesting

that each of fund participants received a letter or annual statement which would have referenced

forfeitures).

Plaintiffs, however, have proffered evidence to the effect that Plan Participants were *not*

notified of the refunds when they occurred and that incoming trustees were not informed of past

refund payments when they joined the board.  *See* Pls.' Reply to Def. Trustees' Resp. to Pls.'

Mot.; Ex. B (Molnar Dep. at 144:19 - 145:9); Ex. C (Lertora Dep. at 220:6- 20).

On this record, the Court concludes that a genuine dispute of fact exists as to whether

Defendants' actions with regard to the 1994 transactions constituted concealment so as to toll the

statute of limitations.  *See J. Geils Band Employee Benefit Plan v. smith Barney Shearson, Inc.*,

76 F.3d 1245, 1252, 1255 (noting that other circuits have interpreted ERISA as incorporating the

federal common law doctrine of "fraudulent concealment" and holding that "in order to toll the

limitations period under Section's 1113's fraud or concealment exception, [the plaintiffs] must

demonstrate '(1) defendants engaged in a course of conduct designed to conceal evidence of

their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of

that evidence, despite (3) their exercise of reasonable diligence.'") (*quoting Larson v. Northrop

Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994).  Defendants' evidence is compelling in this regard,

but the Court is constrained to view all facts in a light most favorable to Plaintiffs at this

8

juncture.  Accordingly, to the extent Defendant Trustees and Defendant Perry seek summary

judgment to the effect that Plaintiffs' claims arising from the 1994 refunds are time-barred,

summary judgment is DENIED.  Similarly, to the extent Plaintiffs seek summary judgment that

said claims are not time-barred, summary judgment is also DENIED.

B.

As to claims arising from Defendants' investment decisions, Plaintiffs allege that

Defendants failed to diversify or otherwise prudently invest Plan assets from at least 1994 to

2005 but – apparently conceding that the three-year "actual knowledge" limitations period

applies to this omission – only seek to recover damages for losses for the three years

immediately preceding initiation of this action.  The parties agree that Plaintiffs lacked actual

knowledge of the composition of the Plan's portfolio until they became trustees in 2005 or 2006.

Since suit was initiated soon thereafter, well within both the general six-year statutory period as

well as the three-year "actual knowledge" limitations period, Plaintiffs, at least at first blush,

would appear to have commenced a timely action as to claims arising from Defendants alleged

failure to diversify or otherwise prudently invest Plan assets.[7]

---

[7] When misconduct is alleged to have been ongoing, courts have used ERISA's statute of limitations provision to limit the period for which a plaintiff can recover but have otherwise allowed plaintiffs to refer to events outside the statutory period to prove that ERISA violations occurred within the limitations period.  *See e.g. Meyer v. Berkshire Life Ins. Co.* ("Meyer II"), 250 F. Supp. 2d 544, 569-70 (D. Md. 2003) (a new cause of action accrues, for statute of limitations purposes, each time the Plan is injured, such that plaintiffs can recover, for those breaches that occur within six years of the filing of the complaint) (collecting cases).  For example, in *Meyer II*, the court concluded that plaintiffs' claims were timely as of April 27, 1997 because plaintiffs had proved that defendants breached their fiduciary duties by *inter alia* failing to diversity plan assets from 1983 to sometime in 1997.  *See Id.*  The Court held, however, that plaintiffs could only recover damages for those breaches that occurred within the six years immediately preceding suit.  *See Id.*

9

Defendants assert, however, that the actual knowledge of union- appointed Trustees Keith Hickman and Steven Stovall, who have served as trustees continuously from 1999 to the date of the filing of this complaint but who have not been sued in this case, should be imputed to Plaintiffs, so as to bar all of Plaintiffs' claims.   Specifically, say Defendants, Hickman and Stovall were trustees of the Plan in April 2002 and both participated in the "unanimous" decision to reject the advice of the Plan's outside consultant, Morgan Stanley, to invest Plan assets in a number of other vehicles, but along with all other Trustees they chose to maintain the current investment portfolio consisting primarily of certificates of deposit and treasury bills just as did the Trustee Defendants.  *See* Perry's Mot., Ex. 8 (Hickman Dep.); Trustees' first Mot. for Partial Summ. J., Ex. 12 (Minutes of Board of Trustees April 23, 2002 meeting indicating that Hickman and Stovall were present at the meeting).  Defendants also suggest that Hickman and Stovall at a minimum acquiesced in all investment decisions made by the Board during the three years prior to this suit.  They further suggest, albeit without reference to record evidence, that Hickman and Stovall participated in the Board's decision to proceed with this lawsuit, whereas Defendant Pepper -- who also participated in the April 2002 Board meeting and its subsequent investment decisions and who was still a Board member at the time suit was initiated -- was excluded from the decision to proceed with this lawsuit and indeed was ultimately dismissed as a trustee.  *See* Perry's Mot. at 7 & n. 2 ("[D]efendant Trustee Pepper was excused from the meeting and ultimately dismissed as a trustee, whereas union trustees Hickman and Stovall were not only allowed to remain in office but were rewarded with insulation from the law suit.").  Defendants

argue that "in electing to continue [] Hickman and Stovall in office . . . the Plan was embracing not only their actions and decisions but also their knowledge."

Plaintiffs respond that for purposes of ERISA the knowledge of anyone other than the individuals filing suit on behalf of the Plan, in this case Miller and Pleasant, cannot be imputed to the Plan.  The Court considers this argument.

While 29 U.S.C. § 1113 does not explicitly address the concept of "imputed knowledge," given Congress' use of the term "actual knowledge," the knowledge of non-plaintiff trustees would seem to have no bearing on a statute of limitations analysis under ERISA.  *See Crimi v. PAS Industries*, Inc. 1995 WL 272580, No. 93 Civ. 6394 (S.D.N.Y May  9, 1995) (in denying motion to dismiss in which defendants asserted that plaintiffs' claims were time-barred, the court declined to impute knowledge of a former trustee and non-plaintiff to plaintiff trustees);  *L.I. Head Start Child Dev. Services, Inc. v. Economic Opportunity Commission of Nassau Co.*, *Inc.*, 558 F. Supp. 2d 378, 398-99 (2008) (holding that in an ERISA class action, knowledge of plaintiffs' counsel is not imputed to plaintiffs for statute of limitations purposes) (citing *Crimi*, 1995 WL 272580).  In *Crimi v. PAS Industries, Inc.,* defendants argued that the contemporaneous knowledge of one trustee of the facts giving rise to plaintiffs' claims should be attributed to all trustees for purposes of triggering ERISA's three-year "actual knowledge" statute of limitations provision.  *Crimi*, 1996 WL 272580 at *3.  The court rejected this argument, reasoning that:

> In light of Congress's clear purpose to protect plan assets, a narrow construction of
> limitations of actions brought by plan trustees is preferable. . . . [W]here one or more

11

trustees have failed to pursue an ERISA claim (whether or not such failure amounts to a
fiduciary violation), another trustee who has no actual knowledge of the underlying facts
– even a successor – should not be unduly restricted from pursuing claims to protect the
integrity of plan assets. . . . Since each trustee has an obligation to protect plan assets,
each has an obligation to seek enforcement and to be such a plaintiff where necessary.
Because the enforcement statute allows any fiduciary to sue, it would be inconsistent to
provide a shorter limitations period for a plaintiff trustee due to the actual knowledge of
another trustee, whether or not a co-plaintiff.

*Id.*

As a general matter, this Court is inclined to agree with the *Crimi* court's sentiment.

Nonetheless, the circumstances of the present case are troublesome.  Declining to impose

knowledge of one trustee to another or to the Plan is one thing.  But here, Hickman and Stovall,

who have not been sued and who voted to authorize suit against other trustees, served as trustees

themselves and presumably partook in the alleged misconduct during the time in which the

challenged misconduct occurred.  The record as currently developed does not establish in detail

what role Hickman and Stovall played with regard to either the 1994 refunds, or the structure

and composition of the Plan's investment portfolio, or the Board's decisions relative to pursuing

the present action.  Thus, even though Defendants have cited no analogous situation in which a

court has departed from the standard ERISA limitations period based on equitable principles,

there may yet be equitable estoppel arguments to be made by Defendants based on particular

actions of Hickman and Stovall.[8]  The Court will therefore entertain further briefing and revisit

at trial the issue of whether, under ERISA statute of limitations jurisprudence or general

equitable principles, Plaintiffs' actions with respect to Hickman and Stovall, as well as to

---

[8] Apart from this, Defendant Trustees may wish to consider joining Hickman and Stovall as co-Defendants in the
case, although in making this observation, the Court does not intend to rule in advance on the propriety of such
joinder.

Pepper, may serve to bar some or all of Plaintiffs' claims. *But See Meyer v. Berkshire Life Ins. Co.* ("Meyer I"), 128 F. Supp. 2d 831, 840-41 (D. Md. 2001) (rejecting the argument advanced by defendant plan administrator that plaintiffs' claims were barred because plaintiffs were contributorily negligent, noting that defendants "provided no precedent supporting the proposition that a breach by the suing fiduciary precludes [its] claim" and "[e]ven if the [plaintiffs] also have some liability for any damages to the plans, that argument does not provide a basis for summary judgment."). For now, summary judgment in favor of Defendants based on equitable estoppel principles is DENIED WITHOUT PREJUDICE.

## C.

As an alternative theory of recovery, Plaintiffs argue that damages caused by Defendants' allegedly illegal transactions may be recovered based upon Defendants' failure to remedy their past breaches, which they state as an independent claim under § 405(a)(3) of ERISA. Plaintiffs contend that this failure-to-remedy cause of action has its own six year statute of limitations period which started running in 2000, the end of the six year limitations period during which the trustees could have cured the breach of duty stemming from the 1994 transactions.

As a preliminary matter, the Court notes that if it is determined that there was fraud or concealment in respect to what Defendants did, their failure-to-remedy claim would become purely academic. The longer period of limitations would apply and the underlying breach would be properly actionable. In order to analyze the failure-to-remedy claim, however, the Court will assume that there was no fraud or concealment.

There is no doubt that, as a general proposition, a cause of action for failure to file suit within a limitations period may be actionable.  For example, clients frequently sue their attorneys for legal malpractice for failure to timely file ligation.  *See* 7 Am. Jur. 2d Attorneys at Law § 211 ("It is negligence on the part of an attorney to fail to commence action on a client's cause within the time prescribed by the applicable statute of limitations").  But on the facts of the present case, allowing a cause of action for failure to remedy a breach already precluded by limitations would lead to an absurd result, namely that the trustees would be liable for not suing themselves for a prior failure to sue themselves.  Furthermore, this would render the statute of limitations period meaningless because at any point, especially when a new trustee comes on board under a supposedly new statute of limitations period, prior trustees could be sued for failure to sue themselves or their predecessors for failure to sue, and so on ad infinitum.

The Court, therefore, rejects Plaintiffs' alternative theory of recovery based on Defendant Trustees' supposed failure to remedy prior breaches.  The result is that the statue of limitations determination will hinge on whether Plaintiffs can establish fraud or concealment, an issue that has already been deferred for determination at a later date.

## D.

Summing up to this point, to the extent Defendants' Motions seek summary judgment on the grounds that all of Plaintiffs' claims are time-barred, such motions are DENIED WITHOUT PREJUDICE.  To the extent Plaintiffs seek summary judgment that their claims are not time-barred, such motion is also DENIED WITHOUT PREJUDICE.

14

V.

The Court also finds that genuine issues of material fact exist as to whether Defendants'
alleged misconduct constituted breaches of fiduciary duty or otherwise violated ERISA; hence,
the parties' cross-motions for partial summary judgment on this ground are also DENIED.  The
Court explains.

A.

Defendant Perry, for example, asserts that he did not function as a fiduciary with respect
to either the Board's decision to refund contributions to employees or its investment decisions,
such that he cannot be held liable for any of their alleged breaches.  Specifically, he claims he
had no control of Plan assets, could not make investment or disbursement decisions, and had no
authority over the CD accounts, since all signature cards were signed only by the Plan's
Trustees.  *See* Perry's Resp. to Pls.' Mot. (citing Perry Dep. At 57:2-58:12; 59:6-65:2).

Plaintiffs respond, however, that while it may not always have been the case, the law now
clearly states that under § 1132(a)(3), a benefit plan administrator is a fiduciary.  *See Provident
Life & Accident Ins. Co. v. Cohen,* 423 F.3d 413, 424 (4th Cir. 2005).  They further assert that
Perry acted as a fiduciary in choosing the banks at which Plan assets would be invested, selected
the CDs for the trustees, and controlled the Plan's checkbook.  *See* Pls.' Reply to Perry's Resp.
to Pls.' Mot., Ex. A;  Ex. E (Perry Dep. 61:21 - 63:14; Lertora Dep. 111:19 - 112:3).

The actual extent of Perry's involvement must await further development of the facts.
Since there are genuine factual disputes as to these particulars, the Court declines to grant
summary judgment to either Plaintiffs or Defendants.

B.

The Court turns to Plaintiffs claim that Defendants violated various provisions of 29

U.S.C. § 1104(a) by causing Plan assets to be invested primarily in certificates of deposit and

U.S. Treasury bills.  *See* Pls.' Mot. at 4 (citing financial records reflected that in 1994

approximately ninety-five percent of Plan assets were invested in CDs and that during the period

of 2004 and 2005, the majority of Plan assets (somewhere between approximately sixty-six and

seventy-nine percent) were invested in U.S. Treasury bonds.)

29 U.S.C. § 1104(a) sets forth the manner in which a Plan fiduciary shall "discharge his

duties," which includes the responsibility to "diversif[y] the investments of the plan so as to

minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do

so."  29 U.S.C. § 1104(a)(1)(c).  That same section also requires a fiduciary to act "with the care,

skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of like

character and with like aims."  29 U.S.C. § 1104(1)(B).  As explained in *Reich v. Walter W.*

*King*, 861 F. Supp. 379 (D. Md. 1994), the legislative history of this provision indicates that the

purpose of the diversification requirement is to minimize the risk of large financial losses.  *Id.* at

383.  Accordingly, Congress declined to establish a specific percentage requirement for

diversification and placed responsibility instead on Plan fiduciaries to determine the appropriate

mix of investments.  *Id.*  The ultimate issue in determining whether Defendants' violated §

1104(c) is whether the decision to diversify or not violated § 1104(a)(1)(B)'s "prudent man"

standard of care.  *See Reich v. Walter W. King Plumbing & Heating Contr.*, 98 F.3d 147, 152

(4th Cir. 1996) ("ERISA requires a plan's fiduciary to diversity the plan's investments unless under the circumstances it is clearly prudent not to do so."); *Meyer II*, 250 F. Supp. 2d at 565 ("[T]he duty to diversify investments cannot be stated as a fixed percentage, because a prudent fiduciary must consider the facts and circumstances of each case.") (internal quotations and citations omitted); *see also Reich*, 861 F. Supp. at 383-84 ("The same "prudent man" standards apply in both subparagraph (B) and (C).") (citing *Lanke v. O'Higgins*, 810 F. Supp. 379, 386 (N.D.N.Y. 1992) and H.R. Rep. No. 1280, 93d Cong., 2d Sess. 304, *reprinted in* 1974 U.S. Code Cong. & Admin. News at 5084).

"A fiduciary's independent investigation of the merits of a particular investment is at the heart of the prudent person standard.'" *Meyer II*, 250 F. Supp. 2d at 566 (quoting *Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951, 957 (D.C. Cir. 1985); *see also Tatum v. R.J. Reynolds Tobacco Co.*, 392 F.3d 636, 639 (4th Cir. 2004) ("When deciding whether a plan fiduciary acted prudently, a court must inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.").  Thus, in determining whether a defendant acted prudently, courts look to whether he determined that the investment decision was "reasonably designed, as part of the portfolio . . . to further the purpose of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action."  *Meyer II*, 250 F. Supp. 2d at 566 (quoting 29 C.F.R. § 2550.404.a-1(b)(2)) (internal quotations omitted).  Courts also take into account whether the fiduciary considered "(A) [t]he composition of the portfolio with regard to diversification; (B) [t]he

17

liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and (C) [t]he projected return of the portfolio relative to the funding objectives of the plan." *Id.*

In the present case, Plaintiffs have proffered evidence that because Perry was apparently unaware of his responsibility to consider diversification, he failed to present alternative investment options for Defendant Trustees to consider. *See* Pls.' Mot. (citing Perry Dep. at 19:10-21:6). They further assert that Defendant Trustees followed Perry's recommendations unquestioningly, failed to inquire into his qualifications for providing investment advice, and undertook no independent investigation of the investments on their own. *See* Pls.' Mot. (citing Perry Dep. at 85:20-86:14). Defendants cite sharply contradictory evidence, suggesting that they maintained appropriate involvement in investment decisions, reasonably monitored the activities of Perry and Scholar and adopted a conservative investment strategy under which Plan assets appreciated over time. *See* Trustees' Resp. to Pls.' Mot., Ex. 11 (Hickman Dep.) Ex. 2 (Perry's Dep); Exs. 8, 9 & 14 (Trustees' Deps.); Trustees Resp. to Pls.' Mot., Ex. 12 (April 23, 2002 Minutes of the Board of Trustees, referring to Morgan Stanley proposal which recommended Plan assets be invested in a number of investment vehicles and stating that "[i]t was agreed by the unanimous vote of the Trustees that the investments would not be changed and that they were pleased with the security of the investments."); *but see* Perry's Mot., Ex. A (Hickman Dep. at 87-111 suggesting that Defendants Lertora and Pepper would not consider Morgan Stanley's recommendations, that the "unanimous decision" on April 23, 2002 pertained only to the

decision not to engage Morgan Stanley as the Plan's financial advisor, and that, despite signing the minutes, Hickman was not satisfied with the current investment portfolio).

Finally, the parties have submitted export reports containing conflicting views of ERISA requirements, particularly with respect to the issue of how plan assets should have been distributed.  *See* Pls.' Mot., Ex. 40 (Export Report of Henry Rose); Ex. 39 (Expert Report of Michael D. Cairns ); Defs.' Resp. to Pls.' Mot., Ex 7 Expert Report of Fred Taylor).

The upshot of these contrary assertions is obvious.  Determining whether Defendants' actions sufficed to meet the "prudent man" standard necessarily requires the Court to weigh the opposing evidence and make credibility determinations.  Summary judgment thus has no place in resolving the failure-to-diversify claim in favor of either Plaintiffs or Defendants.

## C.

The Court considers Plaintiffs' claim that Defendants violated 29 U.S.C. § 1103(c)(1) by improperly transferring so-called forfeitures, which were plan assets, to contributing employers, including entities controlled by trustees.  Defendants submit that they breached no fiduciary duty because (1) ERISA does not prohibit refunding forfeitures to employers; (2) the 1994 Plan specifically required that forfeitures reduce contributions by the employee; (3) in making these transfers, the Trustees were following the advice of plan counsel Scholar; and (4) forfeitures were never Plan assets and therefore their transfer did not violate ERISA's exclusive benefit, anti-inurement and self-dealing provisions.

There is no question that ERISA prohibits the transfer of plan assets to employers.  *See* 29 U.S.C. § 1103(c)(1) ("the assets of a plan shall never inure to the benefit of any employer").

19

It is also true that Trustees must execute their duties in accordance with Plan documents, "insofar as such documents and instruments are consistent with the provisions" of ERISA.  29 U.S.C. § 1104(1)(D).

The core issue before the Court is whether the 1994 distributions were Plan assets. Defendants contend that they were not, because they involved contributions that never vested, citing the balance sheet of the Plan which categorizes the forfeitures as liabilities rather than assets.  *See* Pls.' Mot. Ex. 17 (Independent Auditor's Report, dated June 2, 1995).  Plaintiffs, on the other hand, argue that Defendants are confusing the concept of employees whose rights have not vested with funds that have not vested in the plan, suggesting that because certain employees for whom contributions were made did not become vested under the Plan does not mean that funds contributed on their behalf never vested.  The Court is obliged to say that parties' briefing on this point is not particularly illuminating and, out of an abundance of caution, the Court will defer any decision on the matter at this time.  Accordingly, the cross motions for summary judgment on the forfeiture issue will be DENIED WITHOUT PREJUDICE.

## C.

Plaintiffs also claim that Defendants breached their fiduciary duties in a number of other ways, including but not limited to failing to adequately supervise Perry, his assistant Lee Wagner, and Plan counsel Scholar; by failing to hold the requisite number of meetings; and by failing maintain the requisite number of Board members.  Even so, the only damages for which Plaintiffs seek monetary reparations are the supposed losses to the value of Plan assets caused by the 1994 refunds and the undiversified nature of the Plan's investment portfolio between 1994

20

and 2005.  It would thus appear to be entirely academic for the Court to consider whether other alleged derelictions on the part of Defendant Trustees actually occurred or, if so, whether they constituted breaches of their duties under ERISA.  The Court therefore declines to make any determinations with respect to these allegations.  There is more than enough to deal with in this case in connection with the claims for which Plaintiffs seek tangible relief.

VI.

For the foregoing reasons:

Defendant Trustees First Motion for Partial Summary Judgment [Paper No. 56] is **DENIED**, and Plaintiffs' Motion for Partial Summary Judgment [Paper No. 89] is **DENIED**; Defendant Trustees' Second Motion for Partial Summary Judgment [Paper No. 90] and Defendant Perry's Motion for Partial Summary Judgment [Paper Nos. 87 & 88] are **GRANTED** insofar as they claim that Defendant Trustees are not liable for failure to sue themselves and prior Trustees for failure to sue themselves and prior Trustees within the statute of limitations period under ERISA; in all other respects, the Defendants' Motions for Partial Summary Judgment are **DENIED.**

A separate Order will issue.

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

January 5, 2009