**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FILED
LODGED

ENTERED
REC

FEB 2 4 2010

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY_____ DEPUTY

| | | |
|---|---|---|
| **PLASTERERS' LOCAL UNION** | * | |
| **NO. 96 PENSION PLAN**, *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. **PJM 06-338** |
| | * | |
| **HAROLD PERRY**, *et al.* | * | |
| | * | |
| Defendants. | * | |

**OPINION**

The Court considers Plaintiffs' Motion for Attorney Fees and Expenses [Paper No. 160].
For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

**I.**

Plaintiffs brought suit against Lee Wagner, Sam D. Scholar, Ronald Beddow, Donald
Molnar, Harry Perry, James Lertora, and Edgar Pepper, alleging that, while serving as fiduciaries
to the Plasterers' Local Union No. 96 Pension Plan ("Pension Plan" or "Plan"), they violated the
Employee Retirement Income Security Act ("ERISA") and breached their duties of loyalty,
diversification and prudence. Some individual defendants and claims were dismissed during the
litigation, leaving only Lertora, Pepper, and Perry to proceed to trial.

Lertora and Pepper were members of the Board of Trustees of the Pension Plan and Perry
was the Plan's administrator. Each was alleged to have violated his fiduciary duty by failing to
prudently review the investment strategy pursued on behalf of the Plan. The case was set in for a
bench-trial. At the close of Plaintiffs' case, Perry moved for judgment, arguing that Plaintiffs had

failed to demonstrate that Perry was the Plan's formal administrator, as opposed to someone who merely made purchases at the Board's direction. The Court agreed and Perry was dismissed from the suit.

At the conclusion of the trial, however, the Court found that Lertora and Pepper had indeed violated their fiduciary duties to the Pension Plan. Specifically, the Court found that, after adopting a resolution in November of 1995 authorizing the investment of Plan funds in Treasury bills and federally-insured certificates of deposit, in the years that followed Lertora and Pepper did virtually nothing futher to investigate alternative investment strategies. Although neither Lertora nor Pepper were financial experts and the Pension Plan was a relatively small one, their failure to make any reasonable inquiry as to alternative investment strategies over a seven-year period clearly was deemed to constitute a violation of their fiduciary duties as Plan trustees. As a result, the Court awarded Plaintiffs $432,986.70 in damages.

Thereafter, Plaintiffs filed the instant Motion for Attorneys Fees.

## II.

A successful plaintiff's reasonable attorneys' fees and costs incurred are recoverable pursuant to ERISA § 502(g)(1). *See* 29 U.S.C. § 1132(g)(1). "The determination whether to award attorneys fees and costs lies completely within the discretion of the district court." *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995) (internal quotations omitted).

In making an award of these fees and costs, the Court considers the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of  attorneys fees; (3) whether an award of attorneys fees against the opposing

2

party would deter other persons acting under similar circumstances; (4) whether the party requesting the fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993).

These factors do not constitute a rigid test, but rather provide "general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Id.*

## III.

### A.

The Fourth Circuit has held that the degree of culpability necessary to support an award of attorneys fees requires more than an ERISA violation that amounts to mere "negligence or error." *Carolina Care Plan Inc. V. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006). The district court is given broad discretion to determine whether a defendant's ERISA violations were the result of "a mere oversight," or instead, denote bad faith or culpability. *See Wheeler v. Dynamic Engineering Inc.*, 62 F.3d 634, 641 (4th Cir. 1995). However, gross indifference on the part of a fiduciary constitutes more than mere negligence or error and clearly indicates culpability. *See Werner v. Upjohn Co. Inc.*, 628 F.2d 848, 856-57 (4th Cir. 1980) ("culpable conduct" defined as something "more than mere negligence" such as "the breach of a legal duty").

The Court concludes that there was gross indifference on the part of Defendants in this case. As trustees, they exhibited total neglect of their duties to investigate and diversify the Plan's assets over a period of seven years. The Court is satisfied that such conduct amounts to more than mere negligence or error, and represents a sufficient level of culpability to support an award of attorneys fees and costs.

3

B.

The Defendants' ability to pay also weighs in favor of awarding attorneys fees in this case. Analysis of this factor "should be undertaken with due regard for the type of payor and the nature of the ERISA claim." *Quesinberry*, 987 F.2d at 1030 n. 12. It would blink at reality for the Court to confine its consideration to the obviously modest circumstances of the two individual Defendants who remain in the case. The parties do not dispute that there is an insurance policy which covers errors and omissions of the Defendants. Accordingly, this is not a case where Defendants will have difficulty paying the award out of their own pockets, nor will the award be paid out of the plan assets. This case is similar to *Quesinberry*, where the court noted that the insurance company at issue "could easily afford to satisfy an award." *Id.*

C.

The matter of whether Plaintiffs sought to benefit all participants and beneficiaries of the ERISA plan further militates in favor of awarding attorneys fees. Despite Defendants' suggestion to the contrary, the Court finds that this litigation was intended to "benefit all participants and beneficiaries of [this] ERISA plan." *Id.* at 1029. "An analysis of ERISA reveals an intent to protect participants, beneficiaries and plans" from exactly the type of gross indifference exhibited by Defendants in this case. *NARDA, Inc. v. R.I. Hosp. Trust Nat'l Bank*, 744 F. Supp. 685, 696 (D. Md. 1990). Nothing in the record suggests that Plaintiffs had any purpose in bringing this litigation other than to protect Pension Plan beneficiaries from the inappropriate conduct of the Defendant Trustees.

4

## IV.

When contemplating a motion for attorneys fees and costs a "fee applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckhart*, 461 U.S. 424, 437 (1983). Defendants argue that any award of attorneys fees here should be proportional to the successful and unsuccessful claims brought in the case and Therefore, because Plaintiffs prevailed on only one of many claims, the fee award should be lowered. The Court agrees.

The bills submitted by Plaintiffs in this case do not break out the time they spent in terms of the several Defendants sued, nor among the multiple claims pursued. Plaintiffs argue in effect that they should not have to do so, because all of the work done in this case was necessary. Defendants dispute this conclusion. Again, the Court agrees with Defendants.

There was unquestionably something of a scattershot quality to this litigation. Plaintiffs sued everyone in sight, including individuals only tangentially related to Fund management. They attempted to stretch the relevant time frame for damages back many more years then were reasonably includable. While Plaintiffs were free to pursue such strategies, Defendants should not have to fund Plaintiffs' more farfetched, ill-grounded theories.

Since Plaintiffs' bill is not broken out by specific claims, the Court, in its discretion, will begin by reducing the fee request by one-third.[1]

$563,225 / 3 = $187,741.66

$563,225 - $187,741.66 = $375,483.34

But there is a further reduction.

---

[1] The Court will assume for present purposes that the hourly rates suggested by Plaintiff are reasonable. See Part VI, *infra*.

**V.**

Plaintiffs are not entitled to recover fees for time that is excessive, redundant, or unnecessary. *See Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991) (affirming district court conclusion that fee request claiming 914.5 hours in a case that should have taken only 200 hours was manifestly excessive). Therefore, in granting a fee request, a court should only compensate a reasonable number of attorneys spending reasonable time on the matter.

In this case, the bills submitted suggest several instances of duplicative time billed by Plaintiffs' counsel. For example, the bills detail multiple meetings with third parties or opposing counsel, where two or more attorneys for Plaintiffs billed time for attendance, despite the admonition of the Local Rules that "[o]nly one lawyer is to be compensated for client, third party, and intra-office conferences." Local Rules, Appendix B, 2(d). Moreover, Plaintiffs' records contain numerous time entries so spare of description that it is impossible to discern whether such time is excessive, redundant, or even, in the first instance, necessary. Particularly troublesome examples include entries referring to "work on brief and telephone calls," and "review causes and work on pleadings." *See* Ex. 3, Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees. The Court is left to guess what brief or pleading is contemplated, whom is being called, and in regard to what defendant, claim, or issue.

Accordingly, the Court, in its discretion, reduces the fee request by an additional 10% for redundant or unnecessary time spent.

$375,483.34 - $37,548.33 = $337,935.01

**VI.**

In determining whether the rates charged by Plaintiffs' counsel are reasonable, the Court considers "the prevailing market rate commanded by lawyers of similar skill, experience, and reputation in the relevant community." *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 767 (D. Md. 2001).

The Court finds the rates charged by Plaintiffs' counsel in this case were reasonable. The suggested rates published in Appendix B of this Court's Local Rules provide only a basic guideline to inform the Court in making awards of attorneys' fees. Nevertheless, Plaintiffs' Lead attorney Jonathan Rose charged $385 per hour, a rate within the guidelines outlined in the Local Rules. Moreover, the Court finds the rates charged by Mr. Rose's associates reasonable, even if some slightly exceed the rate suggested in the Local Rules, because they are similar to rates charged by other lawyers litigating complex ERISA matters in the Southern Division of this Court. Indeed, this Court and others have previously awarded comparable rates in the ERISA context. *See Maddred-Exum v. Davco Restaurants, Inc.*, No. 04-660 (D. Md. July 7, 2004) (awarding fees based on a rate of $400 an hour); *see also Curry v. American International Group, Inc. Plan No. 502*, 579 F. Supp. 2d 424, 426-27 (S.D.N.Y. 2008) (awarding fees based on a rate of $400 an hour); *King v. CIGNA Corp.*, No. 06-7025, 2007 WL 4365504 (N.D. Cal. Dec. 13, 2007) (awarding fees based on a rate of $450 an hour).

**VII.**

The Court may also award litigation expenses that are properly documented and are not excessive. *See CoStar Group, Inc. V. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000). In this case, Plaintiffs seek $46,746 in expenses, comprised of filing fees, photocopies, couriers,

7

federal express shipping, Westlaw and Lexis Nexis research, transportation to depositions out of the area, deposition transcripts, and expert fees and costs. Defendants argue that the expenses enumerated are unreasonable, again based on the degree of success achieved, but also on the vagueness of the request.

There is a measure of validity in Defendants' position on the matter of costs. Some costs are "hard," such as filing fees, cost of depositions, and expert fees. Others are "soft," including Westlaw and Lexis Nexis research, photocopies, couriers, and transportation costs out of the area. Once upon a time, attorneys did not separately charge for subscription costs to West Law Reporters or advance sheets, for the firm's paper and supplies used to prepare pleadings, for couriers or in-house messengers, or for postage. In recent years, presumably to hold their own costs down, law firms (and no doubt other professional groups) have taken to separately billing these items as "costs." The Court has no problem with firms choosing to bill clients for these "costs" for their own purposes, but it is an entirely different matter to have these soft "costs" transferred to Defendants in connection with a request for reimbursement of a statutory fee.

The Court views these "soft" costs as part of the cost of doing business – akin to general expenses incurred in providing services – the cost of driving to and from work or taking public transport, the cost of purchasing office equipment (e.g. telephones or computers), or paying salaries of support personnel (e.g. secretaries or office managers).

The Court, therefore, extracts the following "soft" expenses from Plaintiffs' request:[1]

---

[1] In some instances, Plaintiffs' billing records combined "hard" and "soft" expenses in a single line item entry. Because these expenses are not described with enough specificity to determine which portion is appropriate, those expenses are also extracted.

8

Electronic Legal Research:    $24,162.37
Photocopies:                  $1,452.60
Couriers:                     $380.70
Non-Local Transportation:     $736.10

The Court awards the following "hard" expenses:

Filing Fees       $1,530.55
Transcripts       $7,108.92
Expert Fees       $11,375.00

Accordingly, the net for expenses awarded is $20,014.47

## VIII.

For the foregoing reasons, Plaintiffs' Motion for Attorneys' Fees and Expenses is

**GRANTED** in part and **DENIED** in part. The Court **GRANTS** the Motion by awarding

$337,935.01 in fees and $20,014.47 in expenses. In all other respects, the Motion is **DENIED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**February 22, 2010**

9