**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
(Southern Division)

| | | |
|---|---|---|
| PLASTERERS' LOCAL UNION NO. 96 | ) | |
| PENSION PLAN, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. PJM 06 CV 338 |
| | ) | |
| HAROLD PERRY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFFS' OPPOSITION TO**
**FEDERAL RULE OF CIVIL PROCEDURE 59(E) MOTION TO AMEND OR ALTER**
**JUDGMENT AS TO THE PROPER CALCULATION OF DAMAGES**

Dated: April 16, 2010                    Respectfully submitted,

/s/ John C. Hayes, Jr._____
John C. Hayes, Jr. (MD Bar No. 01936)
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington D.C.  20004
(202) 585-8000 (phone)
(202) 585-8080 (facsimile)
jhayes@nixonpeabody.com

*Counsel for Defendant Trustees*

# TABLE OF CONTENTS

I.  MR. PEPPER'S AND MR. LERTORA'S RULE 59(E) MOTION WAS TIMELY FILED WITHIN TWENTY-EIGHT DAYS AFTER THE ENTRY OF JUDGMENT ............2

  A.  Entry Of Judgment Within The Ambit Of Rule 59(E) Took Place On February 24, 2010, Twenty-Eight Days Prior To Mr. Lertora's And Pepper's Rule 59(E) Motion ..................................................................................................................2

  B.  Local Rule 105(10) Does Not Apply To Rule 59(E) Motions ............................................3

II.  MR. LERTORA'S AND MR. PEPPER'S MOTION SATISFIES THE REQUIREMENTS OF RULE 59(E) .........................................................................7

III.  MR. LERTORA'S AND MR. PEPPER'S RULE 59(E) MOTION SHOULD BE GRANTED ...............................................................................................11

  A.  To Properly Calculate Damages The Exception To The Anti-Netting Rule Must Be Applied To The Six Year Period Prior To Filing ........................................................11

  B.  The Netting Rule Applies To ERISA Cases ....................................................14

IV.  PLAINTIFFS CONCEDE THAT THE COURT'S $432,986.70 DAMAGES' CALCULATION IS BASED OFF OF AN ERRONEOUS AND INADEQUATE RECORD ..............................................................................................17

V.  MR. LERTORA AND MR. PEPPER SHOULD NOT HAVE TO PAY FOR PLAINTIFFS' EXORBITANT EXPENDITURES ................................................18

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**
(Southern Division)

| | | |
|---|---|---|
| PLASTERERS' LOCAL UNION NO. 96 | ) | |
| PENSION PLAN, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. PJM 06 CV 338 |
| | ) | |
| HAROLD PERRY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFFS' OPPOSITION TO
FEDERAL RULE OF CIVIL PROCEDURE 59(E) MOTION TO AMEND OR ALTER
JUDGMENT AS TO THE PROPER CALCULATION OF DAMAGES[1]**

The plaintiffs' opposition ignores the following essential factual and legal points:

- The $432,986.70 damages' calculation is based on an erroneous and inadequate record that the plaintiffs argued in their opposition to defendants' motion *in limine*, (Docket No. 154) is "clearly contradicted by the record" and based on outright factual mistakes.

- The plaintiffs argued and the Court held that Mr. Lertora and Mr. Pepper committed non-distinct, sequential breaches of fiduciary duty under 29 U.S.C. § 1104(a)(1)(B) dating from at least six years prior to the filing of the Complaint.

- When breaches of fiduciary duty are ongoing, non-distinct and sequential, courts use ERISA's six year statute of limitations provision to limit the period for which a plaintiff can recover.

- The three year period used by the Court is an arbitrary period for damage assessment and cherry-picks plaintiffs' damages.

Plaintiffs' position, based on an incorrect application of the governing standard and legal principles, is that the above facts and legal principles are irrelevant.  Plaintiffs' position is contrary to the factual record, applicable trust principles, ERISA damages' principles, and the case law interpreting these principles.  As will be shown below, the motion is timely filed within twenty-

---

[1] All Federal Rules of Civil Procedure will hereinafter be referred to as "Rule."

eight days after the entry of judgment, as required by Rule 59(e).  Moreover, Mr. Lertora's and Mr.

Pepper's motion satisfies the requirements of Rule 59(e).

There are several reasons why the motion must be granted.  The two applicable legal

principles[2] *working in conjunction with one another* require, under the facts of this case, that the

Court calculate damages using the six year damages' period.  Moreover, the plaintiffs concede that

the Court's $432,986.70 damages' calculation is based on an erroneous and inadequate record.

If the defendants are liable it can only be for damages' resulting from losses that the Plan incurred

as a result of the breaches found by the Court.

## ARGUMENT

## I.    MR. PEPPER'S AND MR. LERTORA'S RULE 59(E) MOTION WAS TIMELY FILED WITHIN TWENTY-EIGHT DAYS AFTER THE ENTRY OF JUDGMENT

### A.    Entry Of Judgment Within The Ambit Of Rule 59(E) Took Place On February 24, 2010, Twenty-Eight Days Prior To Mr. Lertora's And Pepper's Rule 59(E) Motion

The Rule 59(e) motion was timely filed.  Rule 59(e) provides that a "motion to alter or

amend a judgment must be filed no later than twenty-eight days after the entry of judgment."

Whether a Rule 59(e) motion is timely depends on when a judgment is actually entered.  Plaintiffs

argue that occurred on July 6, 2009 at the conclusion of the four day bench trial before the Court.

Plaintiffs are incorrect.

Judgment was entered on February 24, 2010, not at the conclusion of trial on July 6, 2009.

Pursuant to Rule 58, a judgment is effective only when set forth on a separate document and entered

as provided in Rule 79(a).  The notation of a judgment in the civil docket in the manner prescribed

by Rule 79(a) constitutes entry of judgment.  *See* Rule 58; Rule 79(a); *Barber v. Whirlpool Corp.*,

34 F.3d 1268, 1274-75 (4th Cir. 1994) (stating that Rule 58 "requires that a final judgment be set

---

[2] The two principles are as follows: (1) the netting principle, derived from trust law, requires the netting of profits and losses for non-distinct, sequential investment mistakes; and (2) the so-called *Meyer* principle limits the damages' window to the six year period prior to the filing of the Complaint when alleged misconduct is ongoing.

forth in a document separate from the opinion explaining the judgment.").  Mr. Lertora's and Mr.

Pepper's Rule 59(e) motion would have been premature had it been filed within twenty-eight days

of July 6, 2009 because there was no order issued on July 6, 2009 and no entry of final judgment

until February 24, 2010.

Furthermore, at the conclusion of the bench trial, the Court specifically informed the parties

that it would "defer entering judgment on the $432,986.70" until after considering plaintiffs' motion

for attorneys' fees at which point it would "enter a judgment that covers both."  (*See* Tr. Transcript,

July 6, 2009, at 38:25-39:3.)  Thus, the Rule 59(e) motion was filed in reliance upon the Rules and

on the schedule announced by the Court at the conclusion of trial.  *E.g., Pahuta v. Massey-*

*Ferguson, Inc.*, 997 F. Supp. 379, 383 (W.D.N.Y. 1998) (holding that post-judgment motions will

not be deemed untimely if a party is lulled by the court or opposing counsel into acting after the

time had run to file the motion); *see also* Moore's Federal Practice & Procedure § 2812, at 140.

    B.    <u>Local Rule 105(10) Does Not Apply To Rule 59(E) Motions</u>

Plaintiffs argue that the Rule 59(e) motion was untimely in reliance upon Local Rule

105(10).  Plaintiffs argue that the Rule 59(e) motion is untimely because Local Rule 105(10)

provides, in relevant part, that "any motion to reconsider any order issued by the Court shall be filed

with the Clerk not later than fourteen (14) days after entry of the order."  (*See* Opp. at 11.)

Plaintiffs' argument is that Local Rule 105(10) trumps Rule 59(e).  The plaintiffs are incorrect

because the Local Rule does not apply to Rule 59(e) motions.[3]

Local Rule 105(10) does not apply to Rule 59(e) motions.  The Local Rule refers to

"motions to reconsider" (a term not found in the Federal Rules of Civil Procedure) any "order."  In

---

[3] The recent December 1, 2009 amendments to Rule 59(e) expanded the prior ten day period to twenty-eight days.
Prior to the amendments, both Local Rule 105(10 and Rule 59(e) prescribed the same ten day time periods.  Thus,
prior to the amendments to Rule 59(e), there would no reason for litigants to argue that the time limits in the local
rule trump the time limits prescribed by Rule 59(e).

contrast, the key phrase with regard to Rule 59(e) is "judgment"—a term that is specifically defined

by the Rules. *See* Rule 54(a). In other words, the local rule sets out a special procedure for

reconsideration of pre-judgment orders by the trial court, for example, an order denying a motion

for summary judgment, an order compelling discovery, or the like. *See Iraheta v. United of Omaha*

*Life Ins. Co.*, No. DKC 2004-794, 2005 U.S. Dist. LEXIS 4908, *3 n.1 (D. Md. Mar. 28, 2005)

(noting that the time limits in Local Rule 105.10 apply to a motion to reconsider non-appealable

interlocutory orders, not the time limits in Rule 59(e) or Rule 60). Absent Local Rule 105.10, non-

appealable interlocutory orders would remain open to reconsideration until the entry of judgment.

Hence, Local Rule 105.10 sets time limits for pre-judgment motions where none would otherwise

exist, not for post-judgment motions that are constrained by the time limits set in the Rules. *Cf.*

*Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008) (holding that the district court

abused its discretion in denying a Rule 59(e) motion on the basis that it was untimely pursuant to a

local rule stating that "[a] party must file a motion for reconsideration of an order no later than ten

(10) business days after the court files the order."); *Dubose v. Kelly*, 187 F.3d 999, 1002 n.1 (8th

Cir. 1999).

    Rule 59(e) also supersedes Local Rule 105(10). Pursuant to Rule 83, local rules may

regulate litigation practice in any manner not inconsistent with the Rules. For example, in *National*

*Savings Bank v. Jefferson Bank,* the plaintiff filed a motion to strike a motion of the defendant

because it was filed after the four days allotted for such motions under the local rules. 127 F.R.D.

218, 220 (S.D. Fla. 1989). The district court denied the plaintiffs' motion because the defendant's

motion was timely under the applicable Rule 72(a), which allowed ten days. In holding that Rule

72(a) superseded the local rule, the district court found that the local rule and Rule 72(a) are "plainly

inconsistent" because they "prescribe different time periods." The district court went on to note that

the "two rules prescribe different dates which trigger the appeal time" and that the advisory

committee notes to the Rule 72(a) explained that it fixed a "10-day period in order to avoid

uncertainty and provide uniformity that will eliminate confusion that might arise if different periods

were prescribed by local rule in different districts."

So too here.  Because Local Rule 105(10) and Rule 59(e) prescribe different time periods

within which to file they are plainly inconsistent.  Moreover, the plaintiffs reading of Local Rule

105(10) disturbs the federal scheme by generating uncertainty regarding the time to appeal.  *Cf.*

*Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1274 (4th Cir. 1994) ("[T]he policy behind the separate

document rule is to make clear when filing periods begin. The rule is meant to simplify and make

certain the matter of appealability.  It is not designed as a trap for the inexperienced. . . . The rule

should be interpreted to prevent loss of the right of appeal, not to facilitate loss.")  This conclusion is

bolstered by the committee notes to the 2009 amendments to Rule 59(e), which explained why the

time period to bring a Rule 59 motion was expanded from ten days to twenty-eight days:

> Former experience has proved that in many cases it is not possible to prepare a
> satisfactory post-judgment motion in 10 days, even under the former rule that
> excluded intermediate Saturdays, Sundays, and legal holidays. These time periods
> are particularly sensitive because Appellate Rule 4 integrates the time to appeal with
> a timely motion under these rules.  Rather than introduce the prospect of uncertainty
> in appeal time by amending Rule 6(b) to permit additional time, the former 10-day
> periods are expanded to 28 days.

Thus, the former 10-day period was expanded to provide additional time to litigants to prepare and

file Rule 59(e) motions.  If Local Rule 105.10 operated to constrict the Rule 59(e) time limits, then

it would effectively distort the purpose of the 2009 amendments by imposing a greater burden on

litigants to prepare and file Rule 59(e) motions.  *Cf. McCargo v. Hedrick*, 545 F.2d 393, 397-402

(4th Cir. 1976) (holding that a local rule that "breaks the promise" and "distorts the purpose" of

federal Rule 16 by complicating rather than simplifying pre-trial procedures is void and of no effect as being inconsistent with the federal rule).

Plaintiffs' reliance on unpublished case law from jurisdictions outside of the Fourth Circuit is misplaced. In *Ushodaya Enterprises., Ltd. v. V.R.S. International Inc.*, the court dismissed the defendants' Rule 59(e) motion as untimely because defendants did not file their motion within ten days after the court docketed its decision.[4]  No. 97 Civ. No. 1315, 2000 U.S. Dist. LEXIS 4974 (S.D.N.Y. Apr. 19, 2000). In contrast, Mr. Lertora and Mr. Pepper filed their Rule 59(e) motion within twenty-eight days of the entry of judgment, which was docketed on February 24, 2010 after being specifically deferred by the Court. Furthermore, the court in *Ushodaya* reached the merits, denying the Rule 59(e) motion after finding that the defendants did not successfully demonstrate that the damages' calculation was erroneous. What's more, the court in *Ushodaya* did not confront a local rule that constrained the time period for filing a Rule 59(e) motion; the local rule at issue and the applicable prior version of Rule 59(e) both set ten day time periods.

Plaintiffs' citations to *Zagary v. City of New York*, No. CV-00-897, 2010 U.S. Dist. LEXIS 6507 (S.D.N.Y. Jan. 26, 2010) and *Wood v. Schriro*, No. CV-98-0053, 2008 U.S. Dist. LEXIS 10146 (D. Ariz. Jan. 30, 2008), provide no support for the proposition that Mr. Lertora's and Mr. Pepper's Rule 59(e) motion is untimely. Neither court faced a timeliness objection. Moreover, the local rules of the Southern District of New York do not intrude upon the twenty-eight day expansion of the time period in which to file Rule 59(e) motions. (*See* S.D.N.Y. Local Rule 6.3.) And the

---

[4] To the extent that the court in *Ushodaya* held that a Rule 59(e) motion may not be used to challenge a damages' calculation, that holding is plainly incorrect. First, such a holding subverts the Rule 59(e) standard, which "in essence, gives the district court a chance to correct its own mistake if it believes one has been made." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). Second, numerous, published decisions from other federal courts disagree. *See, e.g., ANR W. Coal Dev. Co. v. Basin Elec. Power Coop.*, 276 F.3d 957, 969 n.13 (8th Cir. 2002) (reversing district court where a Rule 59(e) motion challenging a damages calculation was well-founded); *Commercial Assoc. v. Tilcon Gammino, Inc.*, 801 F. Supp. 939, 942 (D. RI 1992) ("Rule 59(e) has been invoked to correct damage awards that were improperly calculated.")

local rules of the District of Arizona state that there are "no local rules" modifying the time period for Rule 59(e) motions.  (*See* D. Ariz. Local Rules, at 104.)

Because Local Rule 105(10) is a local rule which establishes a procedure for reconsideration of pre-judgment orders, Plaintiffs' arguments distorts its purpose and creates absurd results.  Local Rule 105(10) does not apply to post-judgment Rule 59(e) motions to alter or amend judgments.[5]

## II.    MR. LERTORA'S AND MR. PEPPER'S MOTION SATISFIES THE REQUIREMENTS OF RULE 59(E)

Plaintiffs contend that the motion should be denied because it "does not satisfy the requirements of Rule 59(e)."  (*See* Opp. 11-16.)  Specifically, plaintiffs complain that Mr. Lertora and Mr. Pepper have put forth no new facts or changes to the law that would justify a Rule 59(e) motion, (*see* Opp. at 15-16), that they failed to timely argue that the use of the six-year damages window was improper, (*see* Opp. at 11-14), and that their Rule 59(e) motion presents "mere disagreement" with the entry of judgment, (*see* Opp. at 15).  Those arguments misconstrue the "requirements of Rule 59(e)" and the defendants' motion.

The case law has specified the reasons that support a Rule 59(e) motion.  In the Fourth Circuit, a Rule 59(e) motion can be successful to correct a clear error of law or fact or prevent manifest injustice.  *See e.g., Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997).  As the Fourth Circuit has explained, "Rule 59(e), in essence, gives the district court a chance to correct its own mistake if it believes one has been made."  *Zinkand,*

---

[5] Even if plaintiffs were correct that the Mr. Lertora's and Mr. Pepper's Rule 59(e) motion is untimely, which they are not, an untimely motion to alter or amend is treated as a Rule 60(b) motion. *See, e.g., McDonald v. United States*, No. 08-2091, 2009 U.S. Dist. LEXIS 37204, at *3 (D. Md. Apr. 30, 2009), citing *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

478 F.3d at 637. Accordingly, the district court has discretion "to determine whether additional evidence should be considered or further argument heard." *Id.*

In light of those holdings, plaintiffs' argument that "there is no legal basis to amend the judgment" because "the Motion fails to raise any additional facts, or identify any changes to the law," (Opp. at 15), is misplaced. Mr. Lertora and Mr. Pepper are not relying on newly discovered evidence or changes in the law to support their Rule 59(e) motion, nor are they required to do so. *See, e.g.*, *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (affirming grant of Rule 59(e) motion even though movant did not raise any additional facts, or identify any changes to the law); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007) (same). Rather, the basis of Mr. Lertora's and Mr. Pepper's motion is that the three year damages' calculation is not factually supported nor legally justified. Therefore, the Rule 59(e) motion seeks to correct a clear error of law or fact and/or prevent manifest injustice. The Fourth Circuit has held that such is a permissible basis for a Rule 59(e) motion. *See, e.g.*, *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007). Simply put, there is no requirement that a successful Rule 59(e) motion must "raise additional facts or identify [] changes to the law."

While mere disagreement with the Court's judgment does not support a Rule 59(e) motion, *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993), Mr. Lertora's and Mr. Pepper's objections to the damages' calculation goes beyond mere disagreement. The defendants have established that the $432,986.70 damages' figure is based on an erroneous and inadequate record. (Mem. at 13-15.) Furthermore, defendants demonstrated that the three year damages' period is not legally justified in light of applicable trust principles and ERISA's statute of limitations. (*See* Mem. Parts I & II.) Numerous courts which have considered similar challenges to damages' calculations agree that such arguments go beyond mere disagreement. *See Lubecki v. Omega Logging, Inc.*, 674

F. Supp. 501, 513 (W.D. Pa. 1987) (using Rule 59(e) as a vehicle to correct an improper damages'

calculation based on an erroneous and inadequate record and otherwise not legally justified); *ANR*

*W. Coal Dev. Co. v. Basin Elec. Power Coop.*, 276 F.3d 957, 969 n.13 (8th Cir. 2002) (reversing

district court where a Rule 59(e) motion challenging a damages' calculation was well-founded.);

*Commercial Assoc. v. Tilcon Gammino, Inc.*, 801 F. Supp. 939, 942 (D. RI 1992) ("Rule 59(e) has

been invoked to correct damage awards that were improperly calculated.")[6]

Plaintiffs also argue, incorrectly, that Mr. Lertora and Mr. Pepper failed to properly

challenge the use of the specific three-year damages' window and, thus, their motion must fail.  (*See*

Opp. at 11-14.)  Yet, as plaintiffs are well-aware, the applicable damages' time period was a point

of contention throughout the litigation:

- Mr. Cairns' testified that he had no idea why damages were calculated using a three-year time period.  (*See* Tr. Transcript, July 1, 2009, at 180:7-15.)

- As early as Mr. Cairns' deposition, which took place on December 7, 2007, there was a dispute about the damage calculation period.  During his deposition, counsel for defendants specifically walked Mr. Cairns' through a damages' calculation utilizing the six year time period from 1999 through 2005, which thereby caused plaintiffs to focus on the three year time period.  (*See* Mem. at 4-6; *see also* Defendants Motion in Limine, at 3 n.5, Docket No. 146 ("Mr Kolker: So why did you do the calculations with a 3-year window?  Mr. Rose: Objection. Mr. Cairns: Upon conference with Mr. Rose, we used that number going forward.").)

- The defendants' argued in their pretrial memorandum that plaintiffs could not establish a *prima facie* case of non-speculative loss to the Plan partly because "the time period selected by the plaintiffs' expert is not the correct time frame for measuring damages"; "plaintiffs can only show losses to the Plan by selecting an artificial time frame during which the equity markets were

---

[6] The case law cited by plaintiffs on this point, (Opp. at 15), is inapposite because none of the cases involve remotely analogous challenges to a court's damages' calculations.  *See Shield Our Constitutional Rights & Justice v. Tippett*, No. DKC 2009-0152, 2009 U.S. Dist. LEXIS 100181 (D. Md. Oct. 28, 2009); *Stoyanov v. Winter*, No. WDQ-07-1764, 2010 U.S. Dist. LEXIS 17705 (D. Md. Mar. 1, 2010); *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993); *Frall Developers v. Bd. of County Com'rs. For Frederick Co.*, No. CCB-07-2731, 2010 U.S. Dist. LEXIS 15033 (D. Md. Feb. 22, 2010).

performing well."  (*See* Docket No. 149, Pretrial Memorandum, filed June 25, 2009, at 11-12.)

- Defendants' Motion *in Limine* argued that the damages' calculations should have started in 2000 due to the operation of ERISA's statute of limitations and the applicable trust principles.  (*See* Docket No. 146, Defendants' Motion *in Limine*, at 1 n.1, 2 n.2.)

- During trial, counsel for defendants cross-examined Mr. Cairns, focusing on the incorrect time period he utilized in his calculations.  For example, it was demonstrated at trial that a damages' calculation based on the six year period from December 31, 1999 to December 31, 2005 would result in substantially less damages.  (*See* Tr. Transcript, July 1, 2009, at 167:7-172:16.)  Mr. Cairns conceded at trial that the Plan, as invested in certificates of deposit and treasury bills, would have performed better from 2000 to 2003 than it would have if invested using the method advocated by the plaintiffs.  (*See* Tr. Transcript, July 1, 2009, at 169:2-170:13; *see also* Defs. Tr. Exs. 35, 36.)

- During closing arguments, counsel for Mr. Lertora and Mr. Pepper reiterated that plaintiffs had not established a *prima facie* case of non-speculative loss to the Plan because the damages' time frame from December 31, 2002 to December 31, 2005 was arbitrary and did not account for the substantial relative gains the Trustees' investments enjoyed over the December 31, 1999 to December 31, 2002 time frame.  (*See* Tr. Transcript, July 6, 2009, at 20:19-22:10.)  Counsel for Mr. Lertora and Mr. Pepper argued that under the applicable trust principles defendants are entitled to net gains and losses over both the "bear" and "bull" markets from 2000 to 2005.  (*See* Tr. Transcript, July 6, 2009, at 21:15-22:1.)

- The Court recognized that the parties disputed the applicable damages' time period when it acknowledged that the damages' time period was "at some level picked out of the air."  (Tr. Transcript, July 6, 2009, at 37:6-38:13.)

In short, the record establishes that the three year damages' time period was challenged throughout the litigation and that defendants argued for use of the six year time period based on the applicable legal principles.

## III.    MR. LERTORA'S AND MR. PEPPER'S RULE 59(E) MOTION SHOULD BE GRANTED

### A.    To Properly Calculate Damages The Exception To The Anti-Netting Rule Must Be Applied To The Six Year Period Prior To Filing

Plaintiffs spill much ink arguing about the appropriate statute of limitations period.  (Opp. at 16-24.)  In doing so, the plaintiffs set up a straw man, which they then proceed to knock down.  Fundamentally, the issue is not about the statute of limitations, but about what period of time should be used in calculating damages where there is a finding of non-distinct, sequential breaches.  The defendants demonstrated that a six year period of time should be used.  The plaintiffs' argument does not address that assertion.[7]

At its heart, plaintiffs' argument fails because it is myopic.  Plaintiffs ignore the interrelationship between the applicable legal principles: (1) trust law principles, which courts are required to apply to ERISA determinations as a matter of law, *e.g., Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 261 (4th Cir. 2009), and which require the netting of losses and profits from non-distinct, sequential breaches, (2) ERISA's six year statute of limitations, which limits the period for which a plaintiff can recover when misconduct is alleged to have been ongoing and begun more than six years prior to the filing of the Complaint.  If only principle (1) applied, but not principle (2), then the losses and profits from non-distinct, sequential investment mistakes would be netted backwards without limitation to the first, non-distinct breach of trust.  Principle (2), however, limits the netting of profits and losses required by principle (1) to six years prior to the filing of the Complaint.  This is a point the plaintiffs' ignore.

---

[7] In their opposition, plaintiffs do not address Mr. Lertora's and Mr. Pepper's arguments that the three year statute of limitations cannot apply to limit the damages' window when misconduct is ongoing, without disturbing ERISA's statutory scheme.  (Mem. at 24-25.)  Nor do plaintiffs explain how the three year statute of limitations yielded the $432,986.70 damages' calculation in this case when that figure was calculated using a time period other than the three year period prior to the filing of the Complaint.  (Mem. at 24.)

The Court specifically found that Mr. Lertora and Mr. Pepper committed non-distinct, sequential breaches beginning in 1995 at the latest.  (*See, e.g.,* Docket No. 169, Opinion on Attorneys' Fees Motion, dated Feb. 22, 2010, at 2 ("Specifically, the Court found that, after adopting a resolution in November 1995 authorizing the investment of Plan funds in Treasury bills and federally-insured certificates of deposit, in the years that followed Lertora and Pepper did virtually nothing to further investigate alternative investment strategies.").)  This is consistent with plaintiffs' theory who have always maintained that Mr. Lertora's and Mr. Pepper's breaches were non-distinct and began well before 1995, well more than six years before the Complaint was filed. *See, e.g.*, Docket No. 150, Plaintiffs Proposed Findings of Fact and Conclusions of Law, at 6 ("However, Defendants Lertora and Pepper simply refused to allow any discussion of any potential modification of the imprudent, undiversified investment strategy which the Defendants had implemented and maintained since, at least, 1990.").)  Simply put, in this case the exception to the anti-netting rule applies (a proposition that the plaintiffs do not seriously dispute) and six years is the only damages window available as a matter of law.

Plaintiffs apparently do not grasp the interrelationship between principle (1) and principle (2).  Thus, plaintiffs' lengthy argument that the three year statute of limitations always applies misses the point.  (Opp. at 16-21.)  The issue is not whether the three year statute of limitations applies or does not apply but whether it applies *in the sense that* this Court can use it to limit the damages' period after finding that Mr. Lertora and Mr. Pepper committed non-distinct, sequential investment mistakes over at least a twelve year period of time.[8]

---

[8] Plaintiffs are incorrect that Defendant Trustees Rule 59(e) motion "assumes that the three year limitations period is inapplicable." (Opp. at 21.)  The Rule 59(e) motion does no such thing.  Rather, it points out that the three year statute of limitations cannot be and has never been used to limit the damages period in the manner sought by plaintiffs.  (Mem. at 21-25.)

Plaintiffs' complaint that Mr. Lertora's and Mr. Pepper's position in their Rule 59(e) motion is inconsistent with their earlier position in the litigation misses the mark.[9]  (Opp. at 18-20.)  The argument does not inform the central issue; can a three year statute of limitations be employed to limit the damages' period where the Court finds non-distinct, sequential breaches over at least a twelve year period of time.  The defendants demonstrated that it cannot.  (Mem. at 22-23.)  Plaintiffs' argument about consistency does not address the issue.

Plaintiffs' assertion that Mr. Lertora and Mr. Pepper are improperly relying upon *Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544 (D. Md. 2003) is incorrect.  (Opp. at 21.)  Mr. Lertora and Mr. Pepper do not rely upon *Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544 (D. Md. 2003) for the proposition that "a six year limitations period must be used." (Opp. at 21.)  As this Court noted, *Meyer* supports the proposition that the six year statute of limitations limits the period for which a plaintiff can recover when misconduct is ongoing.  (*See* Docket No. 106, Summary Judgment Opinion, at 9 n.7.)  Mr. Lertora and Mr. Pepper are relying on *Meyer v. Berkshire Life Ins. Co.* only for that proposition.  Where, as here, the Court found that Mr. Lertora and Mr. Pepper committed non-distinct, sequential investment mistakes over at least a twelve year period of time, the only available damages' window is the six year period.[10]

---

[9] There is no inconsistency.  Mr. Lertora and Mr. Pepper previously argued that the three year statue of limitations applies in the sense that it bars plaintiffs action because the actual knowledge of the union-appointed Trustees Keith Hickman and Steven Stovall may be imputed to the plaintiffs because of the relationship between Mr. Hickman and Mr. Stovall and plaintiffs.  Mr. Lertora and Mr. Pepper always maintained the position, however, that the three year statute of limitations does not bar plaintiffs' action based on the named plaintiffs' actual knowledge.

[10] If Mr. Lertora and Mr. Pepper had stolen the money in the Plan in 2000 and invested it for their own account, rather than investing the money conservatively to minimize the risk of loss, then losses and profits over the six year period from 2000 to 2006 would be netted in calculating damages.  Plaintiffs' position effectively subjects Mr. Lertora and Mr. Pepper to higher damages than a thief!  *See* Restatement Second Sections 202(1) and 205; *see also* C. Boone Schwartzel, *Is the Prudent Investor Rule Good for Texas*, 54 Baylor L. Rev. 701, at 819 (Fall 2002) ("Like the thief, a trustee who fails to invest at all receives better treatment than the trustee who tries to carry out his duty, but makes mistakes, since the damages of the trustee who fails to invest are measured by what the trust fund as a whole would have earned had it been properly invested all along.")

B.      The Netting Rule Applies To ERISA Cases

Plaintiffs argue that the exception to the anti-netting rule does not apply to ERISA cases.

(Opp. at 24.)  In making that argument, plaintiffs contend that "there is not much precedent on the

application of the exception to the anti-netting rule" to ERISA cases.  (Opp. at 24.)  While this may

be true, it is a fallacy to conclude that the exception to the anti-netting rule does not apply to ERISA

cases simply because there is a limited body of case law on the issue.

In fact, by virtue of ERISA's intimate linkage to trust law, several courts recognize that the

exception to the anti-netting doctrine may be properly invoked in ERISA cases.  *See, e.g.*, *Carden v.*

*Aetna Life Ins. Co.*, 559 F.3d 256, 261 (4th Cir. 2009) ("Courts are to apply trust-law principles to

ERISA determinations."); *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th

Cir. 2008) (noting that ERISA is "intimately linked" to trust law.); *accord Donovan v. Bierwirth*,

754 F.2d 1049, 1055 (2d Cir. 1985) (concluding that the issue of whether there have been "losses to

the plan" under ERISA § 1109(a) should be resolved based on the common law of trusts, which

underlies ERISA).  For example, in *Alco Industries, Inc. v. Wachovia Corporation*, the district court

held that if an investment strategy amounts to a breach of ERISA's duty of prudent investment a

determination that the breach dated back to a time period when the strategy was profitable would

result in the offset of profit against losses stemming from a non-distinct, continuous breach.  527 F.

Supp. 2d 399, 404 (E.D. Pa. 2007).

Hence, the court expressly recognized that the exception to the anti-netting doctrine does

apply to ERISA cases.  Similarly, in *California Ironworkers Field Pension Trust v. Loomis, Sayles*

*& Company, L.P.*, the Ninth Circuit held that in situations where a fiduciary commits multiple

breaches resulting in both profits and losses, the "fiduciary is liable for the total aggregate loss of all

breaches . . . and may reduce liability for the net loss of multiple breaches only when such multiple

breaches are so related that they do not constitute separate and distinct breaches."  259 F.3d 1036,

1047 (9th Cir. 2001); *see also Lowen v. Tower Asset Management, Inc.*, No. 85 Civ. 9545, 1987

U.S. Dist. LEXIS 15265, *73-*82 (S.D.N.Y. Sept. 23, 1987) (applying anti-netting principle to an

ERISA case but holding that the 26 prohibited investments in various companies and entities were

distinct breaches of trust.)[11]

As these decisions recognize, when there are profits and losses stemming from non-distinct,

sequential investments, damages in an ERISA case have to take into account the net profits and the

losses earned from those investments, a netting principle firmly rooted in trust law.  *Compare*

*Pickering v. El Jay Equip. Co.*, 700 P.2d 134, 139 (Ct. App. Idaho 1985) (holding that the trial court

"proper[ly] allow[ed] offsets" "in a series of related transactions"); *Matter of Estate of Bartlett*, 680

P.2d 369, 375 (Okla. 1984) (holding that the netting principle applied when a trustee made

sequential similar investment mistakes).  Under trust principles, courts must measure any damages

from multiple, non-distinct investment breaches by the overall net performance of the multiple

investments compared with prudent alternatives.

Section 213 of the Restatement Second of Trusts comment f, ill. 8 demonstrates how this

balancing principle operates in the context of this case:

> T is trustee for L for life, remainder to R or R's issue.  Erroneously believing that
> certain property was an appropriate investment for this trust, T purchased that
> property and soon thereafter sold it at a profit; under the same erroneous belief T
> immediately reinvested the proceeds of the first investment in similar property.
> This property is later sold at a loss.  T is accountable only for the net profit from
> these two investments or chargeable only with the net loss because, in the absence
> of additional facts, the purchases are not separate and distinct breaches of trust.

A leading treatise on trust law confirms that netting is required:

> It would seem here that the beneficiary must choose between repudiating the
> entire transaction and treating it as unlawful, or on the other hand electing to treat

---

[11] Plaintiffs argue the rule does not apply to ERISA relying solely on *Trustees of the Local 464A UFCW Union Pension Fund v. Wachovia Bank N.A.*, No. 09-668, 2009 U.S. Dist. LEXIS 109567 (D. N.J. Nov. 24, 2009).  That unpublished decision involves a preliminary motion to strike an affirmative defense.

it as valid as a whole: a beneficiary could not disaffirm the act of the trustee in part and treat it as valid in part.  Furthermore, if the beneficiary elected to affirm the transaction, the damages flowing from the breach were based on the net effect of the operation.

Bogert & Bogert, The Law of Trusts and Trustees (2009) § 708; *accord, e.g.*, *MacBryde v. Burnett*, 132 F.2d 898, 901 (4th Cir. 1942) (holding a trustee liable only for net loss where the trustee purchased shares of a corporation and sold one block at a profit and the rest for a loss); *State v. Morgan Stanley & Co.,* 459 S.E.2d 906, 920 (W. Va. 1995) (holding that an investment banking firm may offset gains against losses incurred in similar investments as the result of "innocent" breaches of fiduciary obligations).

This netting principle prohibits isolating aspects of Mr. Lertora's and Mr. Pepper's conservative investments when measuring damages.  Instead, damages for sequential similar investments must be determined by evaluating the investment's overall net performance, not by subdividing the investment into compartments of gain and loss and awarding damages only for the latter while completely disregarding the former.

After arguing that the netting principle "is inapplicable in ERISA cases," (Opp. at 24), plaintiffs then advance the inconsistent argument that Mr. Lertora's and Mr. Pepper's "argument with respect to the exception to the anti-netting rule also fails because, in actuality, the damages caused by the Defendant Trustees were netted against those portions of the three-year period from 2003-2005 in which they outperformed a prudent, diversified portfolio,"  (Opp. at 26-27).  Once again, the issue is not whether the losses and gains over the three year time period were netted "in actuality."  Rather, the issue is whether the three year period was the proper time period when the Court found that there were non-distinct, sequential investment breaches extending beyond six years prior to the filing of the Complaint.

**IV.    PLAINTIFFS CONCEDE THAT THE COURT'S $432,986.70 DAMAGES'
        CALCULATION IS BASED OFF OF AN ERRONEOUS AND INADEQUATE
        RECORD**

Buried in plaintiffs' hyperbolic contentions, *i.e.*, "apex of the disingenuousness," (Opp. at

18), "consider sanctioning," (Opp. at 20), "drastic overreach," (Opp. at 21), "ludicrous argument,"

(Opp. at 30), "frivolous motion," (Opp. at 4), "attempted to mislead the Court," (Opp. at 6),

"repeatedly falsely stating," (Opp. at 6), "blatantly mischaracterize," (Opp. at 6), "absurd motions

practice," (Opp. at 14), "erroneous contention," (Opp. at 16), there is a significant concession; the

$432,986.70 damages' calculation is in fact based on an erroneous and inadequate record.  (*See*

Opp. at 28 (stating that the $432,986.70 damages figure is "based upon erroneous figures.")  This

alone should decide the matter.  As the Fourth Circuit has said, a Rule 59(e) motion should be

granted if a judgment is "based on an erroneous and inadequate record."  *See EEOC v. Lockheed

Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997).  Both parties to this case agree this judgment is

based on such a record.

Plaintiffs' argue that the erroneous calculations leading up to the $432,986.70 damages'

figure should not matter because the damages' figure is based upon Defendants' trial Exhibit 31.A.

(Opp. at 27-28.)  Several points are in order.  The contents of the exhibit were prepared during Mr.

Cairns' deposition, well before trial, by Mr. Perry's counsel.  It was prepared well before defendants

obtained complete audited financial statements.  (*See* Tr. Transcript, July 1, 2009, 101:11-117:23;

148:16-150:15.)  Defendants Lertora and Pepper never argued that the $432,986.70 damages' figure

was accurate, only that it should form an outer limit or "cap" on the damages because plaintiffs

wrongfully attempted to spring a "new and dramatic difference" in their damages' calculation on the

eve of trial.  (*See* Tr. Transcript, July 1, 2009, 117:4-22; *see also* Docket No. 146, Motion in Limine

To Preclude Plaintiffs' Expert Michael Cairns From Offering Previously Undisclosed Opinions At

Trial.)  Finally, this Court recognized that Mr. Lertora and Mr. Pepper employed Defendants'

Exhibit 31A only to "say[] there should be a cap at this point."  (*See* Tr. Transcript, July 1, 2009,

105:1-5.)

The reality is that the $432,986.70 damages' calculation is based on an erroneous and

inadequate record, unsound legal principles, and that plaintiffs did not meet their burden of proving

non-speculative loss.

## V.     MR. LERTORA AND MR. PEPPER SHOULD NOT HAVE TO PAY FOR PLAINTIFFS' EXORBITANT EXPENDITURES

Plaintiffs argue that Mr. Lertora and Mr. Pepper should pay for all of the exorbitant

expenses the Plan incurred after plaintiffs took over responsibility for managing the Plan's assets in

the latter part of 2005, including $126,987.00 in legal fees that the Court already awarded plaintiffs,

(Docket  Nos. 169, 170), $26,758.00 for a forensic audit relating to the claims that plaintiffs

abandoned following the Court's summary judgment motion, (Docket No. 106), and nearly $10,000

in office supplies.  (Opp. at 30.)  In so arguing, plaintiffs seek to convert ERISA into a device to

give them an investment advantage bestowed on no other investor.  Plaintiffs' arguments fail for at

least two reasons.

First, Mr. Lertora and Mr. Pepper can only be held responsible for losses that the Plan

incurred resulting from the breach found by the Court, a failure to investigate from at least 1999 to

2006.  Because there is no connection between the breach that the Court found and the $26,758.00

that the Plan incurred to investigate plaintiffs' abandoned claims relating to events that took place in

1994, Mr. Lertora and Mr. Pepper as a matter of law should not be held responsible for those costs.

*See, e.g., Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994) ("ERISA holds a trustee

liable for a breach of fiduciary duty only to the extent that losses to the plan result from the

breach").  Nor should Mr. Lertora and Mr. Pepper be held responsible for that portion of the 2005

legal fees, totaling $126,987.00, that relates to plaintiffs' unsuccessful claims, whether against

dismissed defendants or otherwise.  As defendants argued at trial, "you can't burden the performance that occurred during the tenure of the trustees and Mr. Perry with the extraordinary legal fees that Mr. Rose, who was then in charge of . . . the fund, incurred that drive down the number."  (*See* Tr. Transcript, July 1, 2009, 149:14-19.)

Indeed, the Court found, in ruling on plaintiffs' motion for attorneys' fees, (Docket No. 169), that a large percentage of plaintiffs' legal fees were not tied to plaintiffs only successful claim. Plaintiffs argued that "all of the work done in this case was necessary" because of the breaches by Mr. Lertora and Mr. Pepper.  (*Id.* at 5.)  The Court disagreed noting the "scattershot quality" of the litigation and plaintiffs' "far-fetched, ill-grounded theories."  (*Id.*)  Thus, the Court began by reducing the fees requested by plaintiffs by one-third because plaintiffs prevailed "on only one of many claims."  (*Id.*)  The Court further reduced the fees by 10% for time that is excessive, redundant, or unnecessary.  (*Id.*)  Mr. Lertora and Mr. Pepper's conduct did not make it necessary for the Plan to incur its 2005 legal fees and other administrative expenses.  Accordingly, Mr. Lertora and Mr. Pepper should not have to pay for the exorbitant legal fees and expenses the Plan incurred in 2005 after the "regime change" took place.  (*See* Mem. at 25-28.)

Second, with respect to the $126,987.00 in legal fees incurred in 2005, it is fundamentally punitive and unfair to Mr. Lertora and Mr. Pepper to grant plaintiffs a double-award of attorneys' fees.  The Court already awarded plaintiffs $337,935.01 in legal fees and $20,014.47 in expenses. (*See* Docket Nos. 169-171.)  That award encompassed the universe of plaintiffs' entitlement to legal fees in this matter, prior to the entry of judgment.[12]  If the $126,987.00 in legal fees incurred in 2005 is also contained in the award for plaintiffs' underlying successful claim, then that amounts to a double-award of attorneys' fees for plaintiffs—an outcome that plaintiffs urge upon the Court in contending that Mr. Lertora and Mr. Pepper should be held responsible for the legal fees the plan

---

[12] Mr. Lertora and Mr. Pepper do not concede that the award was justified.

incurred after the "regime change" took place in the latter part of 2005.  (Opp. at 30.)  Such a result

is punitive and unlawful because Mr. Lertora's and Mr. Pepper's conduct cannot have caused the

Plan to incur double the amount of legal fees in 2005 than it actually incurred.  This is but one more

factor pointing out the inadequate factual record supporting plaintiffs' claims.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Trustees respectfully request that this Court grant

Mr. Lertora's and Mr. Pepper's Rule 59(e) Motion As To The Proper Calculation Of Damages.


Dated: April 16, 2010                              Respectfully submitted,

                                                   /s/ John C. Hayes, Jr._____
                                                   John C. Hayes, Jr. (MD Bar No. 01936)
                                                   NIXON PEABODY LLP
                                                   401 Ninth Street, N.W., Suite 900
                                                   Washington D.C.  20004
                                                   (202) 585-8000 (phone)
                                                   (202) 585-8080 (facsimile)
                                                   jhayes@nixonpeabody.com

                                                   *Counsel for Defendant Trustees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of April, 2010, I caused a true and correct copy of

the foregoing Reply To Plaintiffs' Opposition To Rule 59(e) Motion As To The Proper

Calculation Of Damages to be served via this Court's ECF system to:

> Jonathan G. Rose, Esq. (MD Bar No. 15138)
> SHEPPARD MULLIN RICHTER & HAMPTON LLP
> 1300 I Street, NW, 11th Floor East
> Washington, DC 20005
> (202) 772-5390 (phone)
> (202) 312-9410 (facsimile)
> jrose@sheppardmullin.com
>
> *Attorneys for Plaintiffs*



/s/ John C. Hayes, Jr._____

John C. Hayes, Jr.